678 So.2d 460 (1996)
STATE of Florida, Appellant,
v.
John Edmond HITCHMON, Sr., Appellee.
No. 95-2064.
District Court of Appeal of Florida, Third District.
August 14, 1996.
*461 Robert A. Butterworth, Attorney General, and Paulette R. Taylor, Assistant Attorney General, for appellant.
Alexander O. Akpodiete, Miami, for appellee.
Before COPE, GODERICH and FLETCHER, JJ.
COPE, Judge.
The state appeals an order striking restitution as a condition of probation. We reverse.
Defendant-appellee John Edmond Hitchmon, Sr. entered into a plea agreement whereby he pled nolo contendere to the offense of dealing in stolen property. The agreed penalty was ten years probation plus restitution in an amount to be set by the trial court, with a cap of $96,000. Defendant commenced serving his term of probation. Subsequently the trial court struck the restitution requirement from the probation order. The state has appealed.
The defendant first argues that the state may not appeal an order denying restitution. For this proposition he relies on State v. MacLeod, 600 So.2d 1096 (Fla.1992). We disagree. Subsequent to the MacLeod decision, the legislature amended section 924.07, Florida Statutes, to authorize a state appeal from "[a]n order denying restitution under s. 775.089." § 924.07(1)(k), Fla.Stat. (1995); ch. 93-37, § 14, Laws of Fla. The order under review is properly viewed as being an order denying restitution. Since the order under review was entered long after paragraph 924.07(1)(k) went into effect, the order is appealable.[1]
Turning to the merits, in this case defendant was charged with purchasing stolen United Parcel Service ("UPS") shipments from a UPS employee, codefendant John Parker. UPS discovered that thefts had been taking place and traced the problem to Parker. Parker admitted that he had been taking merchandise and stated that he had been selling it to defendant for a year or two. *462 Parker agreed to wear a body wire and was recorded negotiating a sale of stolen merchandise to defendant's son, who worked in defendant's business. A warrant was obtained to search defendant's business premises. In the search, Parker identified merchandise that he had sold to defendant.
The merchandise recovered from defendant's business premises fell into two groups. Some of the merchandise was still in the original UPS boxes. Other merchandise had been removed from the boxes but was identified by Parker as having originated with UPS. The merchandise so identified was removed from defendant's business and placed in storage by UPS. This consisted of approximately 123 boxes. Defendant claims that some of the goods removed from his premises belonged to him, and should not be counted in calculating the restitution amount.
By the time the goods were recovered from defendant's business premises, UPS had already paid customers for lost merchandise. UPS testified that it could document $96,000 in losses which it attributed to Parker's and defendant's activities. UPS believed that its true losses were considerably higher (as much as $300,000), but for purposes of restitution, confined its claim to $96,000.
The trial court scheduled two restitution hearings, but continued them at the request of UPS. On March 17, 1995, the restitution hearing began. In an effort to simplify the proceedings, the court interrupted the testimony of the UPS witness and directed the parties to confer to see if they could come up with an agreed figure for the amount of the loss.
After the parties were unable to agree, the defense requested permission to go to the UPS warehouse and go through the 123 boxes. The defense contended that it needed an opportunity to inspect each of the boxes in order to prepare its response to the UPS restitution claim. The court granted the defense request and postponed the completion of the restitution hearing.
On May 12, 1995, there was a further hearing in this matter. Defense counsel at that time stated that defendant's accountant went to the UPS facility and reviewed the boxes. Defense counsel stated that he had not yet received a written report from the accountant. Defense counsel also said that the defendant needed an opportunity to review his own records in order to prepare his defense for the restitution hearing. The state requested that the matter be scheduled for a resumption of the evidentiary hearing.
Defense counsel told the court that during the visit to the UPS facility, a UPS representative stated that if there was not a satisfactory restitution award, then UPS intended to file a civil suit. The trial court then ruled that the parties should proceed with a civil suit and struck the restitution condition from the probation order. We now reverse.
It is not permissible to deny restitution because the victim intends to file, or has actually filed, a civil lawsuit for the same loss. The restitution statute was adopted for the benefit of crime victims. It is intended to provide an additional alternative to reimburse a crime victim, over and above traditional remedies like a civil lawsuit. See Spivey v. State, 531 So.2d 965, 967 (Fla.1988). A crime victim is allowed to pursue both a restitution remedy and a civil remedy. "An order of restitution hereunder [under the restitution statute] will not bar any subsequent civil remedy or recovery, but the amount of such restitution shall be set off against any subsequent independent civil recovery." See § 775.089(8), Fla.Stat.
From the crime victim's viewpoint, a restitution order can be an attractive remedy where the trial court orders installment payments enforceable as a condition of probation. An enforceable order for installment payments is generally not available in a civil lawsuit. Further, in many cases a restitution order can be obtained more quickly and inexpensively than litigation of a civil lawsuit. On the other hand, under the restitution statute the trial court must not only consider the amount of the victim's loss, but also the financial resources of the defendant and any other appropriate factor. Id. § 775.089(6). Consequently, the restitution award may be for less than the victim's claim. The statute is very clear that the remedies of restitution and civil suit are not mutually exclusive; the *463 crime victim may pursue both. Id. § 775.089(8). In the event of a civil recovery the defendant is to receive credit for restitution amounts actually paid. Id. It was therefore an abuse of discretion for the trial court to strike the restitution condition because UPS was contemplating civil suit. UPS was entitled to file a civil suit, if it chose to do so, without forfeiting the right to a restitution order. Id.; see KMC v. State, 485 So.2d 1296, 1298 (Fla. 1st DCA), review denied, 492 So.2d 1335 (Fla.1986).
The trial court order also states that the restitution condition was stricken because UPS had several opportunities to substantiate its loss and had failed to do so. This provision of the order is not supported by the record. It is true that on two occasions the trial court continued the restitution hearing at UPS' request. However, at the March 1995 hearing, it was the defensenot the state or UPSthat asked for a recess of the already-begun restitution hearing so that the defense could inspect the 123 boxes at the UPS warehouse. Neither the state nor UPS can be blamed for a delay which the defendant requested and obtained.
When the matter recurred before the trial court in May 1995, the defense was still not ready to proceed. The defense reported that the defense accountant had reviewed the boxes, but defense counsel did not have the accountant's report. Further, the defense indicated that the defendant would need to do certain additional work in order to prepare for the restitution hearing. It was the state which requested a resumption of the evidentiary hearing, with the defense requesting additional time to prepare.
As we view the record, the defendant in this case negotiated a plea of nolo contendere in exchange for a withhold of adjudication and ten years probation, to include restitution with a cap of $96,000. The question for decision is not whether the defendant will pay restitution; the question is, how much? We reverse and remand for a proper restitution hearing.
For purposes of proceedings on remand, we would point out that in a restitution hearing, "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." Id. § 775.089(7) (emphasis added). Consequently the proof required to tie the UPS boxes to Parker's theft need only meet a preponderance standard, not proof beyond a reasonable doubt.
As the crime victim, UPS is entitled to a full and fair hearing on the amount of restitution. The order under review is reversed and the cause remanded for a bench trial to set the amount of restitution to be paid, and for further proceedings consistent herewith.
Reversed and remanded.
NOTES
[1] Although we need not reach the point, it appears that in the absence of the new statute, certiorari would be available. See State v. Sanderson, 625 So.2d 471, 473 (Fla.1993).