SORONDO, Judge.
Onel Montalvo appeals the lower court’s order of restitution.
In April, 1996, Onel Montalvo was charged by information with grand theft second degree, for unlawfully obtaining or using currency and/or cruise tickets valued between $20,000 and $100,000. The charge stemmed from fund transfers made by Montalvo, a former Dolphin Cruise Lines employee, to obtain cruise tickets and amenities.
On June 17,1996, Montalvo entered a nolo contendere plea in exchange for a withhold of adjudication and a sentence of two years probation with the special condition that he pay restitution in an .amount to be determined later.
A restitution hearing was conducted on August 26,1996. A representative of USF & G Insurance testified that Dolphin Cruise Lines presented an insurance claim for $37,-834.50, which USF & G investigated and adjusted down to $12,457. After applying the policy deductible of $2,500, USF & G paid $9,957. The insurance representative explained that the $37,834.50 claim comprised the total losses that would have occurred if Montalvo had not been caught, as the cruise line was able to re-book some of the cruises for which Montalvo had obtained tickets.
The parties stipulated to the admission of records documenting the alleged losses. These records comprised three separate categories: 1) losses prior to March 29, 1996 ($5,172, which Montalvo agreed he owed); 2) losses incurred on March 29,1996 ($6,885 for tickets and amenities for people' pulled off the cruise with Montalvo); and 3) losses after March 29, 1996 ($400 for tickets booked for cruises scheduled in May, 1996, which USF & G speculated could not have been re-booked in less than one month’s time).
Montalvo testified that he was the national accounts coordinator for Dolphin Cruise Line and that he transferred funds in the company’s computer to buy and sell cruise tickets prior to his arrest. Montalvo acknowledged that he sold about $5,000 worth of tickets before March 29,1996.
On March 29, 1996, Montalvo and friends he had sold tickets to were taken off a cruise ship prior to its departure. Before getting on the ship, he had determined that 15 cabins were still available. He further testified that the cruise line generally held 5 extra cabins, so there could have been as many as 20 cabins available. He did not know what classes of cabins these were. He and his friends were taken off the ship after 12:00 *986 p.m., the cut-off time when available tickets are sold at a discount. Montalvo told the trial court that most people book cruises 75 days in advance.
Defense counsel conceded that Montalvo had to pay $5,100 in restitution but argued that it should stop there because the State had not established that the cruise line would have sold the tickets used by Montalvo and his friends to other customers. The trial court ordered that Montalvo pay $12,197 in restitution ($2,500 to the cruise line and the balance to USF & G), and found that Montal-vo had the ability to pay $500 per month.[1]
On appeal, Montalvo contends that the State failed to carry its burden of establishing by a preponderance of the evidence that he caused a loss to the cruise line in the amount ordered. He argues that because he and his friends were removed from the ship on March 29 before it sailed, and because there were empty cabins on the ship at the time, the state was obligated to prove that the tickets in question would have been sold had he not stolen them. We agree that the state must prove the victim’s losses by a preponderance of the evidence and find that it has done so in this case. We do not agree that under the facts of this case the state was compelled to prove that the cruise tickets at issue would have been sold but for the defendant’s felonious conduct. Such a requirement would convert this restitution hearing into a full blown civil trial for damages and require the victim to do what section 775.089, Florida Statutes (1995), seeks to avoid in part, i.e., forcing such victims to file civil actions against those who victimize them. We refuse to elevate a thief to the status of a legitimate civil litigant.
Section 775.089, Florida Statutes (1995), provides that a defendant shall be ordered to make restitution for damage or loss caused directly or indirectly by the defendant’s offense. “Where restitution is a part of a plea bargain, it should be liberally construed in favor of making the victim whole.” Hercule v. State, 655 So.2d 1256, 1257 (Fla. 3d DCA 1995). Where a plea agreement leaves the amount of restitution to the trial court’s discretion, reversal is not warranted absent a clear showing that the trial court abused its discretion. See Hebert v. State, 614 So.2d 493, 494 (Fla.1993); State v. Hawthorne, 573 So.2d 330 (Fla.1991).
The courts have repeatedly distinguished the proof necessary to impose restitution from that required in civil actions. “We ... recognize that the degree of proof normally introduced in a restitution hearing will not be as extensive as in a civil trial.” Bianco v. State, 594 So.2d 861 (Fla. 4th DCA 1992). In J.K. v. State, 695 So.2d 868, 869 (Fla. 4th DCA 1997), the Fourth District Court of Appeal reiterated:
In setting a monetary amount for restitution, a court is not limited to the damage calculation that would be recoverable in a civil action, but ‘may exercise its discretion as required to further the purposes of restitution.’
Consistent with this view, in State v. Hitchmon, 678 So.2d 460, 462 (Fla. 3d DCA 1996), this Court wrote that:
The restitution statute was adopted for the benefit of crime victims. It is intended to provide an additional alternative to reimburse a crime victim, over and above traditional remedies like a civil lawsuit.
The Supreme Court of Florida has also observed that:
Unlike civil damages, restitution is a criminal sanction. The purpose of restitution is not only to compensate the victim, but also to serve the rehabilitative, deterrent, and retributive goals of the criminal justice system.
Spivey v. State, 531 So.2d 965, 967 (Fla.1988)(emphasis added).
We have been unable to find any cases in Florida dealing with the appropriate measure of a victim’s loss where a defendant steals tickets bearing a face value. The only decision we have located that is on point is People v. Behm, 154 Ill.App.3d 987, 107 Ill.Dec. 905, 912-13, 507 N.E.2d 1274, 1281-82 (1987). In Behm, the appellate court was confronted with a similar factual scenario *987 involving an airline ticket. The court found that the trial judge did not err in ordering restitution in the amount of the face value of the airplane ticket, even in the absence of evidence that the airline had ever honored the ticket or had been unable to sell a similar ticket. Although the court did not discuss its rationale, the standards for restitution in Florida and Illinois are similar.
We agree with Montalvo’s position that restitution awards cannot be speculative. See Glaubius v. State, 688 So.2d 913 (Fla.l997)(speculative evidence insufficient to support $1600 award for investigative costs); Stocks v. State, 687 So.2d 325 (Fla. 5th DCA 1997)(restitution award, based upon estimated time figures made before repair work was completed, reversed for factual determination of the actual time spent to repair damages); Delks v. State, 622 So.2d 624 (Fla. 2d DCA 1993)(restitution award for embezzled rents reversed without proof of how many apartments were actually rented at time of crime); Osteen v. State, 616 So.2d 1215 (Fla. 5th DCA 1993) (restitution may not be awarded for loss of business expenses where the measure of damages is speculative and difficult to prove). See also Fresneda v. State, 347 So.2d 1021 (Fla.1977). In this case, however, the proof of the amount of the cruise lines’ loss was not speculative, as the tickets for the cabins and suites booked by Montalvo and his friends had a face value which reflected their monetary worth. Moreover, the cruise lines’ damages were mitigated by the insurance company’s adjustment of the loss to incorporate only the value of the cabins which the cruise line was unable to re-book.[2]
We conclude that the trial court did not abuse its discretion in ordering Montalvo to pay $12,197 in restitution, pursuant to his plea agreement.
Affirmed.
GODERICH, J., concurs.

. The trial court deducted assessments of $60 for flowers never received and $200 for a cruise not scheduled to depart until May 12, 1996 from USF & G's total of $12,457.

. We stress again that in this case the defendant and his friends were removed from the ship on the afternoon it sailed, beyond the 12:00 pm cutoff when tickets are discounted and well after the industry-standard 75 day advance time in which the cabins are usually booked.