800 So.2d 309 (2001)
Dusti Marie FLETCHER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D00-4695.
District Court of Appeal of Florida, Second District.
November 2, 2001.
*310 James Marion Moorman, Public Defender, Bartow, and Brad Permar, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Jonathan P. Hurley, Assistant Attorney General, Tampa, for Appellee.
DAVIS, Judge.
Dusti Marie Fletcher challenges the trial court's order requiring her to pay $5900 in restitution to the victim for a stolen Gucci watch. We conclude that the trial court abused its discretion in setting the amount of restitution and reverse with directions that the court conduct a new evidentiary hearing for recalculation of the amount of restitution.
Restitution is generally calculated based on the value of the item at the time of the offense. State v. Hawthorne, 573 So.2d 330 (Fla.1991). Although courts are not bound to utilize the fair market value method of valuation and may exercise such discretion as is required to further the purposes of restitution, fair market value is to be used where it would adequately compensate the victim. Id. at 333. Absent evidence that the item taken was a family heirloom or a new automobile, for which fair market value would not adequately compensate the victim, fair market value is the valuation method to be used. Domaceti v. State, 616 So.2d 1148 (Fla. 4th DCA 1993). Since there was no testimony that this watch was a family heirloom or was otherwise "priceless," we conclude that fair market value was the correct method of valuation. Fair market value may be determined either through direct testimony or evidence of: "(1) original market cost; (2) the manner in which the item was used; (3) the general condition and quality of the item; and (4) the percentage of the depreciation." Hawthorne, 573 So.2d at 332.
In this case, the victim's father, who had purchased the watch as a gift for his daughter, testified that he had paid $1500 for the watch in 1987, twelve years before. There was no testimony as to the manner in which the watch was used, the condition and quality of the watch, or the percentage of depreciation. Rather, the State presented evidence of the replacement value of the watch. The owner of the pawn shop where the victim's father had purchased the watch testified that he sold the watch to the victim's father in 1987 for "cost." When asked to explain what that meant in the instant case, he said that his cost was approximately one-third the value of the watch. He explained further that the jewelry industry generally employed a "four-keystone" markup, or four times the wholesale cost of the item, to arrive at the retail cost. Therefore, a markup of 300 percent, which was the markup used here, would have yielded a retail cost of $4500 in 1987, while a 400 percent markup would have yielded a retail cost of $6000.
Other evidence of value was presented by Fletcher's mother and the victim's father. Fletcher's mother testified that the *311 victim first told her that the watch was worth $500. Fletcher's mother also testified that the victim's father told her that the watch was worth $1600. The victim's father presented a Gucci catalog which pictured a watch that was the "closest thing to" the stolen watch. However, it was not the same watch. The face on one watch was round, while the face on the other watch was square. Indeed, the victim's father admitted that the stolen watch had been out of production for so long that the people at Gucci were no longer familiar with it. The victim's father testified that Gucci personnel informed him that the current price on the watch in the catalog was $5900.
In arriving at fair market value, the trial court must first consider the "original market cost" of the stolen item, which was $1500 here. Accordingly, the $4500-$6000 retail cost of the watch in 1987 was irrelevant. Also irrelevant is the $5900 cost of a new Gucci watch that is different from the watch that was stolen.
Of the four factors that the court is required to consider to arrive at fair market value, the State presented evidence of only one, the original market cost of the watch, which was $1500. However, in Bakos v. State, 698 So.2d 943 (Fla. 4th DCA 1997), the court found that testimony as to the purchase prices of items purchased ten years before was sufficient proof of fair market value, even without evidence of the other three factors. Given our belief that the other evidence of value that was presented was irrelevant, we conclude that the trial court abused its discretion when it ordered Fletcher to pay the victim $5900 in restitution since that amount reflects the retail cost of the watch in 1987, which was not the original market cost to the victim's father when he purchased the watch. Accordingly, we reverse and remand with directions to the trial court to conduct a new evidentiary hearing and recalculate the amount of restitution.
Reversed and remanded with directions.
PARKER, A.C.J., and SALCINES, J., Concur.