932 So.2d 1136 (2006)
John Matthew WALENTUKONIS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-2268.
District Court of Appeal of Florida, Second District.
June 16, 2006.
James Marion Moorman, Public Defender, and Timothy J. Ferreri, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Susan D. Dunlevy, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
John Walentukonis appeals an order imposing restitution of $3875 for damage he caused to an inoperable 1991 Dodge pickup truck. Because the State was unprepared to present adequate evidence about the value of this truck at the restitution hearing, the trial court determined the value of the truck in part by taking judicial notice, sua sponte, of "the NADA Blue Book Average Retail Value." Although we understand the trial court's desire to streamline the process of setting restitution in this case, we must reverse and remand for further proceedings.
Pursuant to section 90.202(12), Florida Statutes (2004), a trial court may take judicial notice of "[f]acts that are not subject to dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." Section 90.204(1), Florida Statutes (2004), provides: "When a court determines upon its own motion that judicial notice of a matter should be taken ... the court shall afford each party reasonable opportunity to present information relevant to the propriety of taking judicial notice and to the nature of the matter noticed." Section 90.204(3) also provides that if a court takes judicial notice by *1137 resort to a documentary source of information not received in open court, "the court shall make the information and its source a part of the record in the action and shall afford each party reasonable opportunity to challenge such information."
Here, the court did not follow the procedure required by section 90.204. The specific information upon which the trial court relied is not in our record. Indeed, there appears to be no "NADA Blue Book." Instead, there are two separate books regarding the value of used vehicles: the "NADA Official Used Car Guide" or the "Kelley Blue Book." Although new editions of these guides are published periodically and their content is generally available on the internet, there is no indication what printed edition the trial court reviewed or if it resorted to the internet sources. Further, these guides provide values based upon certain variables regarding the vehicles listed. This vehicle was described at the restitution hearing simply as a 1991 Dodge pick-up truck that was missing its motor and transmission; no model number was provided nor was there an indication of the mileage of the vehicle or the condition of its remaining frame. The order granting restitution does not indicate the assumptions the trial judge made in selecting the value for this vehicle from the guide.
The value of an individual vehicle and particularly the vehicle in this caseis not something that is "not subject to dispute" based upon resort to sources such as a used car value guide. Even if used car guides could be classified as "sources whose accuracy cannot be questioned" and we by no means imply that they can be classified as suchthe value of a vehicle may vary substantially based upon numerous facts that may or may not be reflected in such guides. Because the trial court erred in taking judicial notice of a used car guide to determine the amount of restitution, we reverse the order and remand for further proceedings.
Reversed and remanded.
STRINGER, J., Concurs.
VILLANTI, J., Concurs specially with opinion.
VILLANTI, Judge, Concurring specially.
I fully concur in the result but write to set forth a few suggestions on how to "streamline the process of setting restitution." Because the criminal justice system focuses its resources on apprehension and punishment, the mechanics of establishing and collecting restitution is often overlooked until sentencing and sometimes then addressed only as an afterthought. I suggest that if restitution issues were considered more thoroughly at the outset, and certainly before sentencing, the restitution process would be more efficient and effective. Here's how.
The prosecution could and should obtain restitution information and supporting documents as soon as possibleideally at the intake interview. Often, the victim obtains documentary evidence during the process of repairing or replacing the stolen or damaged items. Or, the victim may receive only verbal quotes, believing this will be enough to establish his or her loss. Frequently, none of this information is provided to the State, unless value is an element of the crime, until minutes before sentencing. This is unfortunate because as the majority opinion shows, the State is then unprepared to present adequate evidence. The process would be significantly improved if the State collected the necessary information and provided it to the defense in a timely manner. As this case *1138 demonstrates, judicial notice cannot always be relied upon to save the day.
Reserving jurisdiction to determine restitution after sentencing, while advisable or necessary in complicated cases, does little to streamline the process. Trial judges may want to consider postponing sentencing until after any restitution discovery is completed or the parties stipulate to an amount. Without proper preparation, a restitution hearing frequently dissolves into a "discovery deposition" which not only tries the judge's patience but requires court time to a degree generally not allowed when restitution is addressed at sentencing.
Early consideration of restitution is also more effective because it capitalizes on the fact that parties are more motivated to reach a comprehensive agreement as to restitution before sentencing, rather than afterwards. This requires the State to prepare the victim ahead of time as to a legally recoverable amount. Ironically, even in cases where restitution is set as a lien, the parties often spend inordinate time debating amounts and evidentiary bases. In probationary cases, it is important to establish a realistic repayment schedule that addresses the probationer's ability to pay so that the victim knows how and when and if he or she will be "made whole." Side benefits of these early efforts will be fewer probation violations based on failure to pay restitution and greater victim understanding and acceptance of the criminal justice system's limitations. Because restitution is often the only visible means by which a victim obtains justice, it should not be treated as an afterthought.