PER CURIAM.
The trial court adjudicated D.E.M. delinquent of burglary of a dwelling and committed him to a high-risk residential program. In this appeal, D.E.M. asserts error only in the court’s imposing an amount of restitution based on the victim’s mere speculation regarding the value of a coin collection taken during the offense. We reverse the restitution order and remand for a new hearing.

Facts

Rodney McLean testified at the July 2012 restitution hearing that he was the victim of a residential burglary on December 22, 2011. The items stolen included a laptop computer, a cell phone, jewelry, a watch, and a fire safe. Stored inside the fire safe was a coin and bill collection, comprising American and foreign money that the victim’s father had given him.
McLean compiled a list of the property taken and the value of some of it. He had serial numbers and receipts for some of the older items. McLean researched the fair market value of the laptop computer, which was less than one year old and in good condition, and found that he could replace it for $499.00 at Best Buy. He put a value of $130.00 on the Blackberry Bold 9600 cell phone, which was the cost to repair it. A receipt indicated that McLean had purchased the fire safe at Target for $29.99. He went on-line to get information about the jewelry and depreciation values. A 2009 written appraisal of a portion of the coin collection, which McLean kept with the coin collection inside the fire safe, was lost when the fire safe was taken.
McLean testified that he had been unfamiliar with coin collecting and learned of this collection only when his father left it to him in his will. The collection had sentimental value because it was originally a gift to the father from the victim’s grandfather. The collection contained approximately one hundred coins. It is unclear what portion of the collection was American coins and bills and what was foreign currency. The North Carolina appraiser, who performed the last appraisal of part of the coin collection, gave McLean a figure of $4,200.00 in September 2009, approximately two years prior to the burglary. When McLean was asked whether he believed the coins had appreciated in value since then, he testified “[t]hey would have had to.” When McLean testified that the appraiser had told him about the collection’s historic value, and that McLean was asking the court for $4,000 based on that appraisal, defense counsel objected to the appraisal as hearsay. The appraiser was not available to testify as to the contents of the missing written appraisal. The court opined that the proper question for the witness was whether, “based on that appraisal,” McLean had an opinion concerning the value of the coins.
To the State’s question regarding what he believed the coin collection was worth, McLean answered: “I believe it’s worth much more than $4,000. I would guesstimate $20,000 to $22,000.” Noting that McLean was the owner of the stolen coin collection, the court asked whether defense counsel would accept the $4,000 figure. Not answering the question, defense counsel asked for permission to voir dire the victim, which the court granted.
McLean admitted having no expertise in valuing the coins. He testified about spending six or seven hours in 2009 with the appraiser/dealer over a two-day period at the appraiser’s antiques shop. They consulted history books and reviewed McLean’s three or four certificates. The appraiser contacted the U.S. Mint and the Japanese Embassy to determine the value of certain items. He went over each coin individually, with McLean and other family members, and told them that coins with *1231 scratches would have less value. Some of the coins had no value. McLean kept the valuable coins in the fire safe. The appraisal of “$4,000 and something” related only to the American coins.
At the hearing, McLean admitted that he could not say what the remaining items in the coin collection were worth. The appraiser could not give him an exact appraisal of some of the foreign coins. McLean testified that after he and the appraiser went through all of the American coins, the appraiser gave him “a guesstimated value” of $20,000 or $80,000 for the entire collection, from which McLean settled on the $20,000 figure. The appraiser’s computer printout of the history of the coins, and the appraisal itself, were stored and lost in the stolen fire safe.
The victim testified that, in the period since the burglary, he had tried to obtain this same information from the appraiser. The appraiser refused to send anything through the mail, however, because he could not verify McLean’s identity and wanted to protect himself legally. McLean believed that the only way he could get this missing information was to go in person to the North Carolina appraiser.
The prosecutor informed the court that McLean was seeking a total amount of $8,689.56, which included the value of the jewelry. The State asked the court to value the laptop computer at $499.00 at depreciated market value.
Regarding the coin collection, defense counsel objected to the entire amount as based on hearsay. Counsel argued that the victim could not testify concerning the absent appraiser’s independent opinion of the coin collection’s value. The court stated that the owner of property can opine as to its value, and the only opinion given by the victim was $20,000. Defense counsel challenged the $20,000 figure as not a credible estimate. The prosecutor reiterated that the victim was requesting only $4,200 and some change for the coins. The court sustained the objection as to the appraiser’s $4,000 figure, but overruled it as to the victim’s $20,000 figure.
The trial court issued a written order with a total restitution amount of $24,689.06 owed to McLean. The order did not specify how much of this amount pertained to the lost items other than the coin collection. In this appeal, D.E.M. argues that it was error to base the amount of restitution solely on the victim’s unsupported “guesstimate” of the value of the coin collection.

Analysis

Florida law provides that, “[i]n addition to any punishment, the court shall order the defendant to make restitution to the victim for ... [d]amage or loss caused directly or indirectly by the defendant’s offense” and “[djamage or loss related to the defendant’s criminal episode,” unless the court “finds clear and compelling reasons not to order such restitution.” § 775.089(l)(a)l.-2., Fla. Stat. (2011). In determining whether to order restitution and the amount itself, the court “shall consider the amount of the loss sustained by any victim as a result of the offense.” § 775.089(6)(a). The State has the burden to demonstrate, by a preponderance of the evidence, the amount of the loss sustained by a victim as a result of the offense. § 775.089(7). We review the restitution order for an abuse of discretion. Bennett v. State, 944 So.2d 524, 525 (Fla. 4th DCA 2006).
It is within the trial court’s discretion “to take into account any appropriate factor in arriving at a fair amount which will adequately compensate a victim for his or her loss and further the purposes of restitution.” Glaubius v. State, 688 So.2d 918, 915 (Fla.1997); see State v. Haw *1232 thorne, 573 So.2d 330, 332-33 (Fla.1991). To meet the requisite proof, however, the evidence must be “more than mere speculation; it must be based on competent evidence.” Glaubius, 688 So.2d at 916.
Generally, a victim/owner is qualified to testify concerning the fair market value of his property. Hawthorne, 573 So.2d at 333 n. 6; Gonzalez v. State, 40 So.3d 86, 88 (Fla. 4th DCA 2010). This general rule is subject to evidentiary requirements, however. “[A] victim’s mere opinion testimony on the value of stolen property is insufficient.” Gonzalez, 40 So.3d at 89; see Rodriguez v. State, 956 So.2d 1226, 1231 (Fla. 4th DCA 2007). That is, the victim must have “a sufficient predicate” on which to base an opinion regarding the value of the items taken. Gonzalez, 40 So.3d at 89; see Peters v. State, 555 So.2d 450, 451 (Fla. 4th DCA 1990). Although the fair market value at the time of the offense .is one common measure of value for restitution purposes, it is not the only standard for valuation. See Hawthorne, 573 So.2d at 333 & n. 4 (acknowledging that sometimes the property’s market value alone does “not adequately reflect the victim’s loss,” citing as one example a family heirloom); Gonzalez, 40 So.3d at 88; Hagan v. State, 746 So.2d 1241, 1242 (Fla. 1st DCA 1999).
In the instant case, the victim testified that an appraiser gave him a “guesstimated value” of $20,000 or $30,000 for the entire coin collection, from which the victim came up with the $20,000 figure. The record contains no supporting documentation or other predicate for this speculative opinion of the value of the lost coin collection. Gonzalez, 40 So.3d at 89. A mere estimate of value, without any evi-dentiary basis, is insufficient to prove an amount for restitution purposes. See Soriano v. State, 968 So.2d 112, 115 (Fla. 4th DCA 2007); Bennett v. State, 944 So.2d at 526 (“Guesstimates and speculative testimony are inappropriate evidence on which to base an award of restitution.”); Tullís v. State, 692 So.2d 229, 229 (Fla. 1st DCA 1997) (concluding that the victim’s “guesstimate” of the cost of repairs to a wall and office door, without any stated basis for the estimate, was legally insufficient to support the restitution amount); Peters v. State, 555 So.2d at 451.
Given the lack of legally sufficient proof to support the estimated value of the coin collection, we reverse the $24,689.06 restitution award and remand with instructions to conduct a new evidentiary hearing to determine the appropriate amount of restitution. Bennett, 944 So.2d at 526; Tullís, 692 So.2d at 229.
REVERSED and REMANDED with instructions.
LEWIS, CLARK, and RAY, JJ„ concur.