DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*January Term 2014*

**KATRINA R. PHILLIPS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-1046

[July 2, 2014]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Robert L. Pegg, Judge; L.T. Case No. 312012CF001603A.

Carey Haughwout, Public Defender, and Emily Ross-Booker, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.

PER CURIAM.

The defendant appeals from a restitution order following her conviction and sentence for various crimes involving the victim's stolen jewelry. The defendant primarily argues that the circuit court erred in determining the restitution amount based on hearsay evidence which the victim obtained from websites. Based on case law, we are compelled to agree with the defendant, and thus reverse and remand for a new restitution hearing.

At the restitution hearing, the victim testified that, after she prepared the list of stolen jewelry, the prosecutor asked her to research how much the jewelry was worth. The victim testified that she researched online the jewelry's value as follows:

> I got high and low prices. Some items I found three or four pieces that were similar, added them together and divided them by whether I got three or four prices. . . . [A]ll the prices that I got were just middle prices. . . . .

The defendant objected on hearsay grounds to the victim testifying about any online values. The circuit court overruled the objection. The court commented, "I think it's a valid method of attempting to obtain a market value."

After the court's ruling, the following exchange occurred between the prosecutor and the victim regarding the victim's estimated value for each item:

Q. . . . [F]irst item that you mentioned, the one-carat diamond, what was the amount you were able to determine?

A. The average was $6,200.

Q. . . . [S]econd item, the tennis bracelet . . . what was the amount you were able to determine?

A. [$2,950].

. . . .

Q. . . . [T]hird item, the [amethyst charm] . . . how much were you able to determine that was worth?

A. . . . [T]hat one was difficult because it had been passed through my family for numerous generations. We got it back in the 1800s and as far as similar stuff, I got [$2,748].

. . . .

Q. . . . [N]umber 4 [the amethyst bracelet], how . . . much were you able to determine for that?

A. [$3,895].

. . . .

Q. . . . [N]umber 5 . . . amethyst earrings.

A. . . . This I only got one price for because I saw a picture of the earrings that looked exactly like mine and [they were] $721.

2

Q.   . . . [N]umber 6, gold chain necklace?

A.   $449.

Q.   . . . [N]umber 7, rope bracelet.

A.   $349.

. . . .

Q.   . . . [N]umber 8, [the one-quarter carat] diamond earrings?

A.   . . . I went with the quarter carat because I do believe that they were quarter carat.  My ex-husband said they were half carat each but I was pretty sure they were quarter carats. . . . $724.

Q.   . . . [N]umber 9, gold wedding band.

A.   $648 . . . .

Q.   . . . [N]umber 10, aquamarine [and] gold bracelet . . . .

A.   . . . $123.  And that item is irreplaceable too.

Q.   . . . Item 11, which is a gold heart ring with a [quarter] carat diamond in each heart.

A.   $1,477.

Q.   And . . . all of these items . . . this is your replacement value if you were to go out and try to get . . . the same type of items that were stolen from you –

. . . .

A.   Right.  Similar . . . as I could find.

. . . .

Q.   Item 12 [the gold flower ring].

A.   $142.

3

The victim testified that the total amount which she was seeking for the jewelry was $20,511.

On cross-examination, the victim recounted the names of the six websites she used to perform her research. She also testified that she performed her research on two separate days – the first day approximately two months before the restitution hearing, and the second day approximately two weeks before the restitution hearing. She conceded that she did not purchase any of the items and, for most of the items, had no first-hand knowledge of their purchase date, original value, or quality. She also conceded that, at the defendant's sentencing hearing two months earlier, she estimated the items' total value to be $14,000, and had changed her estimate based on her internet research.

During closing arguments, the defendant contended that the victim's estimate of the items' values from the internet was not sufficient to establish the restitution amount because it was inadmissible hearsay.

The circuit court found that the victim's testimony was sufficient to establish the restitution amount. The court reasoned:

> [*Sage v. State*, 988 So. 2d 150 (Fla. 4th DCA 2008),] tells us how we figure out what restitution should be. And the four factors that set forth what we can consider and ascertain the fair market value are the original market cost, the manner in which the item was used, the general condition and the quality of the item, and the percentage of depreciation. I'm not sure that jewelry ever depreciates, but the defendant should not get the benefit of a bargain by . . . stealing something that's antique or that's old, that it's no longer capable of somebody just finding an exact duplicate like you could an automobile or a stereo or something like that. Also [*Sage*] stands for the proposition that an owner of property is generally qualified to testify as to fair market value of the property. The burden is certainly on the State to do that, but also [*Sage*] tells us that when a plea agreement is reached and a defendant agrees to pay restitution, it should be liberally construed in favor of making the victim whole again, and that's what I intend to do in this case. I recognize that some of these items may not be exactly capable of being an exact value . . . because she just didn't buy these things. She doesn't have receipts for when she actually bought them because the jewelry, as oftentimes is, is a gift. So I choose to resolve the credibility as a fact finder in favor of . . . the victim.

. . . I'm going to find restitution in the total amount in this case of $20,511.

After the circuit court entered a written restitution order, this appeal followed. The defendant primarily argues that the circuit court erred in determining the restitution amount based on hearsay evidence which the victim obtained from websites. We review the court's determination of the restitution amount for an abuse of discretion. *T.D.C. v. State*, 117 So. 3d 809, 811 (Fla. 4th DCA 2013).

Based on case law, we are compelled to agree with the defendant's argument. "Hearsay evidence may not be used to determine the amount of restitution when there is a proper objection by the defense to the hearsay evidence." *Conway v. State*, 115 So. 3d 1058, 1059 (Fla. 4th DCA 2013) (citation and quotation marks omitted); *see also G.M.H. v. State*, 18 So. 3d 728, 729-30 (Fla. 2d DCA 2009) (reversing and remanding for a new restitution hearing based on the state's concession that the trial court should not have admitted the victim's mother's hearsay evidence of repair prices based on her internet research). Here, the victim's reliance on hearsay evidence from websites resembles a witness's reliance on hearsay evidence from a catalog or contacts with non-witnesses, which courts have held cannot support the determination of a restitution amount. *See, e.g., Gonzalez v. State*, 40 So. 3d 86, 89 (Fla. 4th DCA 2010) ("Catalog prices alone are insufficient to establish a sufficient predicate."); *I.M. v. State*, 958 So. 2d 1014, 1016 (Fla. 1st DCA 2007) ("[The witness] did not have personal knowledge of the value of the ruined items, but relied upon the opinions of his vendors, who did not testify."). Thus, the victim's reliance on hearsay evidence from websites was insufficient to establish the restitution amount.

In reaching our conclusion, we recognize that it was practically impossible for the victim to establish the restitution amount without relying on hearsay evidence. As the victim conceded, she did not purchase any of the items and, for most of the items, had no first-hand knowledge of their purchase date, original value, or quality. Therefore, in her good-faith effort to establish the values of the items, she relied on her memory of the items' appearance, her understanding of the quality, and her ability to find similar items on the internet. She went so far as to visit multiple websites in order to determine an average price for the items.

The fact that it was practically impossible for the victim to establish the restitution amount without relying on hearsay evidence appears to have caused an unjust result for the victim, because she and the state appear to have no other means by which to prove the restitution amount.

5

This case is distinguishable from the situation we faced in *Conway*, where the victim could have presented a competent witness to testify as to the stolen item's restitution amount. In *Conway*, the stolen item was an antique silverware set. The set was melted down by the pawnshop which purchased it from the defendant. However, the victim's son testified that he contacted a silver company representative who was able to identify and determine a restitution amount for the set. The amount was relied upon by the trial court to determine restitution. We reversed because the son's testimony was based on hearsay – merely reciting his conversation with the silver company representative. 115 So. 3d at 1059. Presumably, if the victim or the state had incurred the expense of presenting the silver company representative as a witness at the restitution hearing, then the hearsay objection would have been resolved, allowing the restitution amount to be awarded.

Here, however, it is highly unlikely that the victim could have presented representatives from the various websites she researched to testify as to the restitution amount. Putting aside the time and expense of such an endeavor, such representatives would have a difficult time establishing their competency or reliability to opine as to the stolen items' value. Unlike the recognizable antique silverware set in *Conway*, the stolen items here were not unique and, because the items were gifts, the victim had no reason to possess any knowledge regarding the items' purchase date, original value, or quality. Thus, the testifying representatives would be left to accept the victim's non-descript description of the stolen items and merely speculate that a similar-looking item had a certain value. Such speculative testimony likely would be insufficient to establish the restitution amount. *See id.* (the amount of restitution "must be established through more than mere speculation") (citation and quotations marks omitted). Thus, although we are obligated to remand for a new restitution hearing, we are doubtful that the new hearing will provide the victim with any relief.

We surmise that the victim here is not alone. This court and our sister courts recently have issued multiple opinions reversing restitution awards where the victim and the state have not presented competent, substantial evidence supporting the amount awarded. *See, e.g., T.D.C.*, 117 So. 3d at 811 ("[A]bsent circumstances tending to show that [fair market value] does not adequately compensate the victim or otherwise serve the purpose of restitution . . . the amount of restitution should be established through evidence of [fair market value] at the time of the theft.") (citation and quotation marks omitted). In each case, a wholly innocent person has been left with a more difficult, if not impossible, path to recover their stolen

items' value.  The circuit court in this case recognized this unjust result in honorably attempting to justify its determination of the restitution amount here.

Based on the foregoing, we recommend that our state legislature revisit section 775.089, Florida Statutes (2012), and consider providing trial courts with wider discretion in setting the restitution amount.  We recommend the following underlined revision to section 775.089(7):

> Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence.  The court is not bound by fair market value as the sole standard for determining restitution amounts, but rather may exercise such discretion as required to further the purposes of restitution, including consideration of hearsay. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense is on the state attorney. The burden of demonstrating the present financial resources and the absence of potential future financial resources of the defendant and the financial needs of the defendant and his or her dependents is on the defendant. The burden of demonstrating such other matters as the court deems appropriate is upon the party designated by the court as justice requires.

*See State v. Hawthorne*, 573 So. 2d 330, 333 (Fla. 1991) ("[A] court is not tied to fair market value as the sole standard for determining restitution amounts, *but rather may exercise such discretion as required to further the purposes of restitution.*") (emphasis added); *Noel v. State*, 127 So. 3d 769, 774 (Fla. 4th DCA 2013) ("[R]estitution to victims is a central 'penological interest' of Florida criminal law."); § 90.802, Fla. Stat. (2012) ("*Except as provided by statute*, hearsay evidence is inadmissible.") (emphasis added). This proposed statutory change would permit a victim-owner of property to offer an opinion as to its value that is based upon hearsay.

In the meantime, we will enforce the law as it currently exists.  We reverse and remand for a new restitution hearing.

*Reversed and remanded for a new restitution hearing.*[1]

---

[1]  The defendant also argues that the circuit court erred in setting the restitution amount based on the stolen items' purchase price instead of their fair market value.  We disagree.  The record indicates that the court determined the restitution amount based on the stolen items' fair market value, albeit improperly

GROSS, GERBER and FORST, JJ., concur.

\*       \*       \*

*Not final until disposition of timely filed motion for rehearing.*

---

based upon hearsay evidence from websites. *See T.D.C.*, 117 So. 3d at 811 ("Generally, the amount of restitution is established through evidence of fair market value of the stolen items at the time of the theft.") (citation and quotation marks omitted).