# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**CRICKET KATHLEEN TOOLE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-2115

[February 20, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Samantha Schosberg Feuer, Judge; L.T. Case No. 50-2015-CF-011860-AXXX-MB.

Carey Haughwout, Public Defender, and Claire V. Madill, Assistant Public Defender, West Palm Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Mark J. Hamel and Alexandra A. Folley, Assistant Attorneys General, West Palm Beach, for appellee.

### _ON DEFENDANT'S MOTION FOR REHEARING, REHEARING EN BANC, AND CERTIFICATION_

MAY, J.

We grant the defendant's motion for rehearing and certification, deny the defendant's motion for rehearing en banc, and substitute the following opinion for the opinion we issued on October 24, 2018.

The labyrinth of restitution is at issue in this appeal. The law on restitution is both challenging in terms of proof, yet essential to ensure justice for the victim. It currently requires proof of the fair market value of property lost or damaged. That proof was lacking in this case. We therefore reverse and remand the case for a new restitution hearing.

The defendant pled guilty to dealing in stolen property and false verification of ownership to a pawnbroker. The State nolle prossed the grand theft charge. The plea agreement did not specify a restitution

amount, but stated: "Restitution ordered for victim . . .; amount to be determined by agreement of parties or at restitution hearing (hearsay & causation objections waived)." The transcript does not reflect any limitation on the amount of restitution.

At the hearing, the State sought restitution not only for the items pawned, but for all items taken. The defendant objected and argued that restitution should be limited to the items pawned as she pled only to the dealing in stolen property and false verification of ownership to a pawnbroker charges. She did not plead to the grand theft charge, which the State nolle prossed. The court overruled the objection and proceeded with the hearing.

The victim testified to the items' value by providing their original price, and guesstimating their replacement value.[1] For example, the victim testified that a Samsung flat screen television "roughly" cost "probably around" $5000 or $6000, that an X-Box 360 cost "right around" $100, that some stolen sweatshirts cost "around 70 dollars apiece," that a leather jacket cost "[p]robably around 4- or 500 dollars," and that a bag containing pool sticks was worth "right around" $1,200.

The State sought $9,984.12, an amount reached by subtracting the value of some recovered items from the total amount, and the victim's guesstimates of replacement value for the remaining items. The defendant not only objected to restitution for the items that had not been pawned, but to the victim's guesstimates, and his qualifications to testify to present value. The court ordered the defendant to pay $9,984.12, which included the original price, not the fair market value, of many of the items.

Section 775.089(7), Florida Statutes, provides:

> Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense is on the state attorney. The burden of demonstrating the present financial resources and the absence of potential future financial resources of the defendant and the financial needs of the defendant and his or her dependents is on the defendant. The burden of demonstrating such other matters as the court deems appropriate is upon the party designated by the court as justice requires.

---

[1] He provided receipts for some items.

2

§775.089(7), Fla. Stat. (2018).

*State v. Hawthorne*, 573 So. 2d 330, 333 (Fla. 1991) provides the formula for determining fair market value for restitution purposes. Fair market value should be established through direct testimony or evidence of the following four factors: "(1) original market cost; (2) manner in which the item was used; (3) the general condition and quality of the item; and (4) the percentage of depreciation." *Id.* at 332.

There are a few more rules that apply to restitution hearings. One, victims are "qualified" to testify to the value of their property. *Id.* at 333 n.6. Two, "[h]earsay evidence may not be used to determine the amount of restitution when there is a proper objection by the defense to the hearsay evidence." *Phillips v. State*, 141 So. 3d 702, 705 (Fla. 4th DCA 2014) (quoting *Conway v. State,* 115 So. 3d 1058, 1059 (Fla. 4th DCA 2013)). Three, the burden of proof is preponderance of the evidence. § 775.089(7), Fla. Stat. (2018). And four, trial courts have discretion in ruling on the admissibility of evidence. *Phillips*, 141 So. 3d at 707.

Here, the victim testified about the items' purchase price and provided some receipts. This was sufficient to satisfy the first factor, the original cost. But, there was no testimony about the manner in which the items were used, their general condition and quality, and the percentage of depreciation. The victim merely provided replacement cost guesstimates. This testimony was insufficient to establish fair market value.

In *Thompson v. State*, 68 So. 3d 425, 427 (Fla. 4th DCA 2011) we reversed a restitution award because it was "based on purchase price without adequately calculating the fair market value of the stolen items."

> We find the victim's testimony from personal knowledge regarding the purchase price and purchase date to be competent evidence to substantiate the items' original cost. The record, however, contains no competent evidence of the "general condition and quality of the items" or the percentage of depreciation that would permit the trial court to calculate market value.

*Id.* (citations omitted).

Contrastingly, in *Yaun v. State*, 898 So. 2d 1016, 1017 (Fla. 4th DCA 2005), we affirmed a trial court's restitution award based on the victim's testimony of the items' value. We did so, however, because restitution was

part of the plea agreement. *Id.* The record does not reflect such an agreement here.

Under either *Thompson* or *Yaun,* the evidence here was insufficient.

Restitution continues to be a perplexing uphill battle for victims. Recently, Floridians voted to amend our constitution to in part address restitution. Art. I, § 16, Fla. Const. (2018) (Constitutional ballot Amendment 6, also known as Marsy's Law). The amendment ensures the victim's right to:

- full restitution and to be provided with assistance collecting restitution;

- have any monies or property collected from any person who has been ordered to make restitution be first applied to the restitution owed to the victim before paying any amounts owed to the government; and

- compensation as provided by the law.

*See* Art. I, § 16, Fla. Const. (2018).

Despite the statute, the rules, the case law, and the constitutional amendment, proving restitution continues to be difficult for victims, and receiving compensation for their loss continues to be elusive. *See, e.g., G.M.H. v. State,* 18 So. 3d 728, 729–30 (Fla. 2d DCA 2009); *I.M. v. State,* 958 So. 2d 1014, 1016 (Fla. 1st DCA 2007); *Smith v. State*, 941 So. 2d 479, 481 (Fla. 3d DCA 2006); *Ibrahim v. State*, 866 So. 2d 749, 751 (Fla. 5th DCA 2004).

We have previously suggested a legislative fix by adding the following to section 775.089(7): "The court is not bound by fair market value as the sole standard for determining restitution amounts, but rather may exercise such discretion as required to further the purposes of restitution, including consideration of hearsay." *See Phillips*, 141 So. 3d at 706. And yet, the statute remains the same as does the problem--proving restitution.

Because the State failed to prove fair market value here, we reverse the restitution award, and remand the case for a new hearing to determine

4

restitution using *Hawthorne's* formula.[2]   But, because the issue persists, we certify the following question to the Supreme Court of Florida as one of great public importance.

> Is *Hawthorne's* formula for determining restitution based on the fair market value of the victim's property still viable after the passage of Amendment 6 (Marsy's Law), or should a trial court no longer be bound by fair market value as the sole standard for determining restitution amounts, and instead exercise such discretion as required to further the purposes of restitution, including consideration of hearsay?

*Reversed and remanded for a new restitution hearing.*

GERBER, C.J., concurs.
CIKLIN, J., concurs specially with opinion.

CIKLIN, J., concurring specially.

With the fervent hope that the Florida Legislature tackles and addresses Florida's broken statutory restitution scheme, I take the liberty of setting out most of an insightful law review article written by Florida attorney Adam Hapner.

## DO YOU KNOW THE FAIR MARKET VALUE OF YOUR PROPERTY?: A CALL TO THE LEGISLATURE TO REVISE SECTION 775.089, FLORIDA STATUTES, GOVERNING RESTITUTION

\* \* \* \*

## II.   MEASUREMENTS OF PROPERTY LOSS

### A. *Fair Market Value*

In most cases, the appropriate measure of the victim's property loss is the fair market value of the property at the time of the offense.[19]   "Fair

---

[2] The defendant also suggests that restitution be limited to the items pawned because she did not plead to the grand theft charge.  A review of the plea hearing and plea form reveal no limitation on the restitution amount.

[19] *See* State v. Hawthorne, 573 So. 2d 330, 333 (Fla. 1991) ("We recognize that in most instances the victim's loss and the fair market value of the property at the time of the offense will be the same.").

market value" is defined as "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction."[20] To establish fair market value, the State must present either direct testimony or evidence of all of the following four factors: "(1) original market cost; (2) manner in which the item was used; (3) the general condition and quality of the item; and (4) the percentage of depreciation."[21]

## 1. Replacement Value

Normally, replacement value is an improper measure of the victim's loss.[22] But if a "ready market of identical items" to the property exists,[23] or if replacement value is the actual loss suffered by the victim,[24] replacement value and fair market value may be the same.

## 2. Retail Value

In general, retail value is also an improper measure of the victim's loss.[25] However, if the victim deals in the type of goods lost, stolen, or

---

[20] BLACK'S LAW DICTIONARY 1785 (10th ed. 2014).

[21] *Hawthorne*, 573 So. 2d at 332; *see also* Mansingh v. State, 588 So. 2d 636, 638 (Fla. Dist. Ct. App. 1991). The four fair market value factors were first announced in *Negron v. State*, 306 So. 2d 104 (Fla. 1974), in which the Supreme Court of Florida held that when the value of property is an essential element of a crime, the value must be established based on the fair market value of the property at the time of the offense. *Id.* at 108.

[22] *See* Ibrahim v. State, 866 So. 2d 749, 750 (Fla. Dist. Ct. App. 2004) ("Generally, fair market value, not replacement value, is the correct measure of damages.").

[23] *See* Domaceti v. State, 616 So. 2d 1148, 1149 (Fla. Dist. Ct. App. 1993) ("Certainly where there is a ready market of identical items to the stolen item, restitution should be limited to its replacement.").

[24] *See* Dixon v. State, 601 So. 2d 606, 607 (Fla. Dist. Ct. App. 1992) ("In the instant case, the victim for purposes of restitution is the insurer . . . . Because the insurance policy involved in this matter provides coverage based upon replacement cost, we cannot say that the trial court abused its discretion in concluding that the loss caused by the appellant's act was the replacement cost of the stolen items." (citation omitted)).

[25] *See, e.g.*, Walentukonis v. State, 932 So. 2d 1136, 1137 (Fla. Dist. Ct. App. 2006) (holding that the trial court erred in taking judicial notice of the retail value of a damaged truck based on a used car guide to determine the amount of restitution); Fletcher v. State, 800 So. 2d 309, 311 (Fla. Dist. Ct. App. 2001) ("In arriving at fair market value, the trial court must first consider the 'original market cost' of the stolen item, which was $1500 here. Accordingly, the $4500-$6000 retail cost of the watch [at the time it was purchased] was irrelevant.").

damaged, retail value—rather than replacement or wholesale value—may represent the true market value of the victim's loss.[26]

## B. *"Fair Amount" Value*

Fair market value is not the sole standard for determining restitution amounts.[27]  In *State v. Hawthorne*, the Supreme Court of Florida held that when fair market value does not adequately reflect the victim's loss, such as with a family heirloom, or when consideration of depreciation would be inequitable, such as with a recently purchased car, the court "may exercise such discretion as required to further the purposes of restitution."[28]  In a subsequent case, the Supreme Court of Florida interpreted the holding in *Hawthorne* to mean that "the trial court has discretion to take into account any appropriate factor in arriving at a *fair amount* [that] will adequately compensate a victim for his or her loss and further the purposes of restitution."[29]  In other words, if the trial court finds that fair market value is an inappropriate measure of the victim's loss, the appropriate measure is "fair amount" value.[30]

Not surprisingly, there is no precise definition of "fair amount" value. In recognition that the primary purpose of restitution is to compensate the victim, the measure is intentionally broad so it can encompass instances when the market value of the victim's property does not adequately compensate the victim.[31]  For example, in *Hawthorne*, after the defendant was found guilty of grand theft auto, the trial court ordered him to pay restitution to the owner of the stolen vehicle "in the amount of $1500 for

---

[26] *See, e.g.*, Nix v. State, 604 So. 2d 920, 922 (Fla. Dist. Ct. App. 1992) (holding that "the retail value of the gasoline is an appropriate measure of the fair market value" of fuel stolen from a gas station); Garrison v. State, 553 So. 2d 1377, 1379 (Fla. Dist. Ct. App. 1989) ("Under the evidence presented to the trial court, that court could reasonably conclude that Mr. Garrison effectively stole thirteen retail sales from the victim, and that the victim was entitled to be reimbursed for those thirteen retail sales at the fair market value established by the retail price.").
[27] *See* State v. Hawthorne, 573 So. 2d 330, 333 (Fla. 1991).
[28] *Id.* at 333 & nn.4–5.
[29] Glaubius v. State, 688 So. 2d 913, 915 (Fla. 1997) (emphasis added).
[30] *See id.*
[31] *See Hawthorne*, 573 So. 2d at 333 ("[W]e can foresee instances when the market value of the property would not adequately reflect the victim's loss or when the consideration of the percentage of depreciation would be inequitable . . . . Therefore, we hold that a court is not tied to fair market value as the sole standard for determining restitution amounts, but rather may exercise such discretion as required to further the purposes of restitution." (footnotes omitted)).

the vehicle and $250 for the owner's travel expenses."[32]  This amount of restitution was based solely on the victim's testimony:

> At the restitution hearing, the owner testified that the auto at issue was a 1979 Ford Fairmount; had a book value of $1650 in 1985 when it was purchased for $1530; was repaired shortly before the theft and was in good operating condition; was stolen 14 months after purchase; and was valued at zero after the theft because it had been completely burned.  The owner further testified that she did not know the mileage of the car at the time it was stolen, and that she had incurred expenses of $250 in securing alternative transportation.[33]

On appeal, the First District Court of Appeal of Florida reversed the trial court's award of restitution, holding that the State had failed to establish the fair market value of the stolen vehicle at the time of the theft because the State presented no evidence regarding the percentage of depreciation for the vehicle.[34]

The Supreme Court of Florida reversed the First District Court, holding that the amount of restitution ordered by the trial court was supported by competent, substantial evidence.[35]  Specifically, the court stated that because the victim testified to the "purchase price of the car, the book value at the time of purchase, the repairs made to the car, and the general condition of the car[,] . . . the amount of the restitution order was supported by the evidence."[36]  Thus, in *Hawthorne*, although there was no precise measurement of the victim's loss, and the victim did not testify to all of the fair market value factors, based on the evidence presented, the court found that $1500 was a "fair amount" to compensate the victim for the car and to further the purposes of restitution.[37]

### III.  METHODS AND PROBLEMS OF PROOF

Despite the laudable efforts made by the *Hawthorne* court to limit the inequitable results that can undoubtedly occur when the State is required to establish precise measurements of loss, the requirements currently

---

[32] *Id.* at 331–32.
[33] *Id.* at 331.
[34] *Id.* at 332 (citing Hawthorne v. State, 558 So. 2d 156, 157 (Fla. Dist. Ct. App. 1990)).
[35] *Id.* at 333.
[36] *Id.*
[37] *See Hawthorne*, 573 So. 2d at 333.

imposed by Florida law often make it extremely difficult, if not practically impossible, for the State to prove the victim's loss.[38]  Regardless of which measurement of value is used, the methods available to the State for establishing the value of the victim's property in a restitution hearing are limited.  Moreover, as discussed below, each approach encounters problems due to the Florida Evidence Code.[39]

## A. *Fair Market Value*

### 1. Direct Evidence

If the State seeks to establish fair market value via direct testimony, it can hire an expert witness to testify concerning the value of the property. However, hiring an expert witness to testify to fair market value involves considerable time and expense.[40]  In addition, when property is stolen or lost and the victim has little information regarding the date of purchase, original price, or other details of the property—such as when the victim receives the property as a gift—the expert will have a difficult time establishing his or her competency and reliability to opine as to the property's value, as required by section 90.702, Florida Statutes.[41]  In such circumstances, the expert must accept the victim's description of the property and speculate that a similar item has a certain value.[42]  However, Florida courts have found that such speculative expert testimony is insufficient to establish fair market value.[43]

---

[38] *See, e.g.*, Phillips v. State, 141 So. 3d 702, 705 (Fla. Dist. Ct. App. 2014) (per curiam) ("The fact that it was practically impossible for the victim to establish the restitution amount without relying on hearsay evidence appears to have caused an unjust result for the victim, because she and the state appear to have no other means by which to prove the restitution amount.").

[39] *See infra* note 48 and accompanying text.

[40] *Phillips*, 141 So. 3d at 706.

[41] *Id.*; *see* FLA. STAT. § 90.702 (2014) ("[A] witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion or otherwise, if:  (1) The testimony is based upon sufficient facts or data; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case.").

[42] *Phillips*, 141 So. 3d at 706.

[43] *Id.*; *see, e.g.*, D.E.M. v. State, 109 So. 3d 1229, 1232 (Fla. Dist. Ct. App. 2013) ("In the instant case, the victim testified that an appraiser gave him a 'guesstimated value' of $20,000 or $30,000 for the entire coin collection, from which the victim came up with the $20,000 figure.  The record contains no supporting documentation or other predicate for this speculative opinion of the value of the lost coin collection.  A mere estimate of value, without any evidentiary

Another way for the State to establish fair market value via direct evidence is to present the testimony of the victim.  As a practical matter, the victim is often the State's best (if not only) witness.  In *Hawthorne*, the court noted that "an owner of property is generally qualified to testify as to the fair market value of his property," whether or not the owner is qualified as an expert.[44]  This statement presumes that the owner has familiarity with the characteristics of the property, knowledge of its uses and purposes, and experience in dealing with it.[45]  Yet, that presumption is a "fragile" one.[46]  If it is not shown that the owner has knowledge of the property's fair market value, Florida courts routinely hold that the victim's mere opinion testimony of the value of his or her property is insufficient to establish the amount of restitution.[47]  Thus, unless the victim deals in the type of goods lost, stolen, or damaged, the victim is unlikely to be sufficiently qualified to provide the fair market value of his or her property.  Of course, the cases in which a burglar takes art from the home of an art

basis, is insufficient to prove an amount for restitution purposes."  (citation omitted)); *see also* FLA. STAT. § 90.705(2) (2014) (providing that if the defendant "establishes prima facie evidence that the expert does not have a sufficient basis for the opinion, the opinions and inferences of the expert are inadmissible unless the party offering the testimony establishes the underlying facts or data").

[44] State v. Hawthorne, 573 So. 2d 330, 333 n.6 (Fla. 1991).

[45] Sanchez v. State, 101 So. 3d 1283, 1286 (Fla. Dist. Ct. App. 2012) (stating that "an owner, though presumed competent to testify to the value of stolen property, must demonstrate personal knowledge of the characteristics of the stolen property, such as the quality, cost, and condition of the property"); Craig v. Craig, 982 So. 2d 724, 729 (Fla. Dist. Ct. App. 2008) (quoting Sun Bank/N. Fla., N.A. v. Edmunds, 624 So. 2d 753, 756 (Fla. Dist. Ct. App. 1993)).

[46] *See Sanchez*, 101 So. 3d at 1286 ("The competence presumed of an owner is fragile, and where the owner shows a lack of familiarity with the stolen property, the opinion evidence will not support a determination of value. . . . Rather than offering a bare opinion, an owner's estimate of the value of stolen property must be supported by facts that show enough familiarity with the property to lend credence to the opinion."); *Craig*, 982 So. 2d at 729.

[47] *See, e.g., D.E.M.*, 109 So. 3d at 1232; Fernandez v. State, 98 So. 3d 730, 731 (Fla. Dist. Ct. App. 2012) (finding that "the victim's opinion alone was insufficient to support the amount awarded"); Bennett v. State, 944 So. 2d 524, 526 (Fla. Dist. Ct. App. 2006) ("A victim's testimony, without documentation, is not enough to support an award of restitution." (citing State v. Schuette, 782 So. 2d 935, 937 (Fla. Dist. Ct. App. 2001))); *see also* 1 CHARLES W. EHRHARDT, EHRHARDT'S FLORIDA EVIDENCE § 701.1, at 713 (2013 ed.) ("An owner can testify to the value of his or her property although the witness is not qualified as an expert.  Most decisions require the owner to have adequate knowledge upon which to base the opinion.  Usually, mere ownership of property, however, does not automatically qualify an owner to testify as to the property's value.").

appraiser, an arsonist burns down the house of a realtor, or a robber takes a vehicle from a used-car salesperson are undeniably rare.

Even when the victim makes a good-faith effort to learn the fair market value of his or her property prior to testifying, the victim's opinion may still be inadmissible due to the rules of evidence.[48] For example, at least one Florida court has noted that sometimes it is "practically impossible for the victim to establish the restitution amount without relying on hearsay evidence."[49] In theory, at least at its origination, a victim's personal knowledge of the value of his or her property is usually based on some form of hearsay, such as a receipt,[50] an appraisal or estimate,[51] or the price in a store catalog or on a store website.[52] However, because there is no statutory exception to the general exclusion of hearsay in restitution proceedings,[53] Florida courts have unanimously held that if the defense properly objects, hearsay evidence is generally inadmissible to determine the amount of restitution.[54] Thus, because the owner must provide some

---

[48] *See, e.g., Phillips*, 141 So. 3d at 705; *see also infra* note 54 and accompanying text; *see generally* EHRHARDT, *supra* note 47, at 707.

[49] *Phillips*, 141 So. 3d at 705.

[50] Twilegar v. State, 42 So. 3d 177, 199 (Fla. 2010) (stating that a receipt is hearsay if "admitted for the truth of the matters asserted (the dates of the purchases, the amounts, the locations, and whether the purchases were made in cash)").

[51] Leatherwood v. State, 108 So. 3d 1154, 1154–55 (Fla. Dist. Ct. App. 2013) (holding that "an appraisal letter from a jeweler to establish the value of the stolen jewelry" was hearsay and was insufficient to establish the amount of restitution unless properly qualified as a business record); T.J.N. v. State, 977 So. 2d 770, 773 (Fla. Dist. Ct. App. 2008) ("When testimony concerning the estimated cost of repairs to damaged property is 'offered in evidence to prove the truth of the matter asserted,' it is 'hearsay' unless 'made by the declarant while testifying at the trial or hearing.'"); Butler v. State, 970 So. 2d 919, 921 (Fla. Dist. Ct. App. 2007) ("Because the written estimate was inadmissible hearsay evidence, we hold that the trial court erred in admitting the estimate and basing the value of the exterior door solely on this evidence.").

[52] *See Phillips*, 141 So. 3d at 705 ("Here, the victim's reliance on hearsay evidence from websites resembles a witness's reliance on hearsay evidence from a catalog or contacts with non-witnesses, which courts have held cannot support the determination of a restitution amount."); Gonzalez v. State, 40 So. 3d 86, 89 (Fla. Dist. Ct. App. 2010) ("Catalog prices alone are insufficient to establish a sufficient predicate."); Ricci v. State, 550 So. 2d 34, 36 (Fla. Dist. Ct. App. 1989) ("[T]he price on the page from the jewelry catalog is inadmissible hearsay.").

[53] *See* FLA. STAT. § 90.802 (2014) ("Except as provided by statute, hearsay evidence is inadmissible.").

[54] *See, e.g., T.J.N.*, 977 So. 2d at 773 ("Hearsay evidence may not be used to determine the amount of restitution when there is a proper objection by the

predicate for the valuation he or she offers,[55] and hearsay evidence is an insufficient basis for the owner's opinion in Florida,[56] many victims will not be sufficiently qualified to opine as to their property's value.

The general exclusion of hearsay does not mean that hearsay evidence is never admissible in a restitution hearing, however. Even when the defendant objects, if the hearsay evidence meets an exception to the general exclusion rule and has "some minimal indicia of reliability," the hearsay evidence is likely admissible.[57] For example, "[w]ritten opinions

defense to the hearsay evidence."); Smith v. State, 941 So. 2d 479, 480 (Fla. Dist. Ct. App. 2006) ("We reverse and remand for a new restitution hearing because the State's evidence was improperly based on hearsay."); Johnson v. State, 856 So. 2d 1085, 1087 (Fla. Dist. Ct. App. 2003) (noting that the testimony used to support the restitution award was improper, in part, because it was based on hearsay); Herrington v. State, 823 So. 2d 286, 286 (Fla. Dist. Ct. App. 2002) (stating that the trial court erred in setting the amount of restitution based on hearsay evidence to which the defendant properly objected); Rae v. State, 638 So. 2d 597, 598 n.1 (Fla. Dist. Ct. App. 1994) ("The trial court erroneously believed hearsay evidence was admissible in a restitution hearing. The general rule is that hearsay testimony is not admissible in a restitution hearing unless defense counsel fails to properly object to the evidence."). The requirement of an objection by the defense is more of a preservation of error requirement than an additional requirement to the general rule excluding hearsay. *See* Molter v. State, 892 So. 2d 1115, 1117 (Fla. Dist. Ct. App. 2004) (stating that the defendant "*waived* the hearsay objection by failing to raise it" (emphasis added)).

[55] D.E.M. v. State, 109 So. 3d 1229, 1232 (Fla. Dist. Ct. App. 2013) (stating that "the victim must have 'a sufficient predicate' on which to base an opinion regarding the value of the items taken"); Fino v. Nodine, 646 So. 2d 746, 748–49 (Fla. Dist. Ct. App. 1994) ("Before lay opinion testimony can be properly admitted, a predicate must be laid in which the witness testifies as to the facts or perceptions upon which the opinion is based." (citation omitted)).

[56] *See generally* EHRHARDT, *supra* note 47, at 707 ("Lay opinion based on hearsay evidence is not admissible.").

[57] *See* Box v. State, 993 So. 2d 135, 139 (Fla. Dist. Ct. App. 2008); *accord* McKown v. State, 46 So. 3d 174, 175 (Fla. Dist. Ct. App. 2010). To the extent that the "minimal indicia of reliability" requirement has been interpreted by some courts as a "relaxed evidentiary standard in restitution hearings," State v. Davis, 133 So. 3d 1101, 1106 n.6 (Fla. Dist. Ct. App. 2014), these courts are mistaken. It is in fact an *additional* requirement to the admission of hearsay at sentencing originally created by federal courts to safeguard defendants' right to due process because the Confrontation Clause does not apply at sentencing. *See Box*, 993 So. 2d at 139 ("We acknowledge that despite the fact that *Crawford* does not apply to restitution hearings, the State is still not permitted to admit any and all hearsay. Rather, the trial court may only allow hearsay having some minimal indicia of reliability to be injected into the sentencing proceeding." (citing United States v. Littlesun, 444 F.3d 1196, 1199, 1200 (9th Cir. 2006))). It should also

or estimates may qualify as a business record exception to the hearsay rule under section 90.803(6), Florida Statutes . . . ."[58] But for a written opinion or estimate to meet the business record exception, the production of estimates must be a regularly conducted business activity, and the State must either call a witness to lay the foundational requirements of section 90.803(6) or establish the foundation by certification or declaration.[59] Thus, because written opinions and estimates are unlikely to be self-authenticating, as noted above, the State must incur the additional time and expense of producing an additional witness to testify concerning the value of the victim's property, and even then, the witness may not be sufficiently qualified or have enough information to form a reliable basis on which to opine.[60] Indeed, Florida courts routinely reverse trial courts' restitution awards because the State's evidence failed to comply with the foundational requirements of section 90.803(6).[61]

---

be noted that, in *Box*, the hearsay at issue was a "self-authenticating public record[]" and thus did not require an analysis of its admissibility under the Florida Evidence Code. *Id.* at 136; *see* FLA. STAT. § 90.803(8) (2014) (providing that public records and reports are admissible hearsay "unless the sources of information or other circumstances show their lack of trustworthiness").

[58] Butler v. State, 970 So. 2d 919, 920 (Fla. Dist. Ct. App. 2007).

[59] *Id.* at 920–21.

[60] *See supra* notes 40–43 and accompanying text.

[61] *See, e.g.*, Leatherwood v. State, 108 So. 3d 1154, 1154–55 (Fla. Dist. Ct. App. 2013) ("Over Leatherwood's objections, the State sought to introduce an appraisal letter from a jeweler to establish the value of the stolen jewelry. However, the State failed to properly qualify the letter as a business record pursuant to section 90.803(6) and section 90.902(11), Florida Statutes (2012)."); *McKown*, 46 So. 3d at 175 ("While the victim had her bank statements with her in court, a predicate was not laid for their authenticity or reliability . . . . Without laying that foundation, the evidence is inadmissible hearsay."); Moore v. State, 47 So. 3d 387, 388 (Fla. Dist. Ct. App. 2010) (reversing the trial court's restitution order where the victim "provided testimony regarding the prices she paid for the items she purchased, estimates on the items she received as gifts, and a business card on which an employee of a jewelry store had listed the values of the pieces of jewelry she purchased from that store"); T.J.N. v. State, 977 So. 2d 770, 773 (Fla. Dist. Ct. App. 2008) (reversing the trial court's restitution award where the "State presented the testimony of the insurance adjustor regarding the estimated cost of repairs to the damage on the right side of the truck," and "the insurance adjustor revealed that he was basing his testimony on an estimate he had received from an auto body shop"); House v. State, 614 So. 2d 677, 677 (Fla. Dist. Ct. App. 1993) (reversing the trial court's restitution order because "[m]uch of the documentary evidence on which the state relied was subject to the hearsay rule and failed to meet the strict requirements for admissibility under the 'business records' exception, on which the state relied").

## 2. Indirect Evidence

To establish fair market value indirectly, the State must present evidence of each of the following four factors: "(1) original market cost; (2) manner in which the item was used; (3) the general condition and quality of the item; and (4) the percentage of depreciation."[62] However, this approach undoubtedly requires the testimony of the victim, another witness, or both,[63] and thus encounters the same evidentiary requirements mentioned above.[64] For example, if the victim received the property by gift or inheritance, as is often the case with jewelry, the victim may not be able to testify to the original market cost without speculating or relying on hearsay.[65] In such circumstances, even if an appraiser is hired, he or she will not be able to opine as to the item's original market cost without knowing the details of the item.[66] Furthermore, as in *Hawthorne*, many victims will have a difficult time providing the percentage of their property's depreciation because such knowledge is typically outside the scope of most laypeople's experience.[67] Yet, if the State fails to prove with specificity the percentage of depreciation and the trial court makes a good-faith effort to depreciate the item, the appellate court will reverse the restitution award because it is error for the court to "arbitrarily" depreciate an item.[68]

---

[62] State v. Hawthorne, 573 So. 2d 330, 332 (Fla. 1991).

[63] The victim will often be the only witness who can testify to the manner in which the property was used and the general condition and quality of the property, for example.

[64] *See supra* Part III.A.1.

[65] *See Moore,* 47 So. 3d at 388 ("The victim's testimony regarding what the jewelry store's employee told her regarding the estimated value of the unrecovered jewelry was improperly admitted hearsay. Additionally, the victim's testimony regarding the items she received as gifts was also insufficient to establish the items' values because the victim did not provide testimony of her own knowledge or opinion regarding the values." (citation omitted)); Peters v. State, 555 So. 2d 450, 451 (Fla. Dist. Ct. App. 1990) ("Absent a sufficient predicate showing a basis for such an opinion, the mere opinion of the victims as to the value of their lost property, as here, is insufficient to establish that value. Even less is it sufficient when, again as here, the victims' opinions to a large extent were 'estimates.'"); Abbott v. State, 543 So. 2d 411, 412 (Fla. Dist. Ct. App. 1989) (reversing the trial court's restitution order where "[t]he witness' estimated figure was arrived at by considering the cost to replace the jewelry, relying on purchase receipts, a partial appraisal, magazines, and recent purchases of gold," and where "she conceded her lack of knowledge of current market value").

[66] *See supra* notes 41–43 and accompanying text.

[67] *See Hawthorne,* 573 So. 2d at 332.

[68] Thompson v. State, 68 So. 3d 425, 427 (Fla. Dist. Ct. App. 2011) ("Application of such an arbitrary percentage of depreciation, without an explanation or record

## B. *"Fair Amount" Value*

"Fair amount" value is a more relaxed standard for measuring the victim's loss because it allows the court to consider "any appropriate factor" in determining the amount of restitution to award.[69] However, even when the trial court uses the "fair amount" standard to determine the victim's loss, the rules of evidence still apply.[70] Consequently, the court's consideration of any appropriate factor is limited by what evidence the State can present in accordance with the rules.

Moreover, these cases are rare because, as the court noted in *Hawthorne*, "in most instances the victim's loss and the fair market value of the property at the time of the offense will be the same."[71] Consequently, the State must prove fair market value in the majority of cases.[72] Therefore, more often than not, the State is faced with the dilemma of either spending considerable time and expense to prove the value of something that was unjustly taken from the victim or allowing the victim to walk away empty-handed for a second time.[73]

---

support, was an abuse of discretion."); Kiefer v. State, 909 So. 2d 572, 574 (Fla. Dist. Ct. App. 2005) (stating "there must be sufficient evidence in the record to support application of a depreciation rate").

[69] *See* Glaubius v. State, 688 So. 2d 913, 915 (Fla. 1997) (stating that "the trial court has discretion to take into account any appropriate factor in arriving at a fair amount which will adequately compensate a victim for his or her loss and further the purposes of restitution").

[70] *See* State v. Davis, 133 So. 3d 1101, 1106 n.6 (Fla. Dist. Ct. App. 2014) ("Although federal law explicitly provides that the federal rules of evidence do not apply at sentencing proceedings, the Florida Evidence Code contains no such parallel provision." (citation omitted)).

[71] *Hawthorne*, 573 So. 2d at 333.

[72] *See id.* ("Where it is determined that a restitution amount equal to fair market value adequately compensates the victim or otherwise serves the purposes of restitution, we agree with the court below that the value should be established either through direct testimony or through evidence of the four factors announced in *Negron*." (footnote omitted)); Fletcher v. State, 800 So. 2d 309, 310 (Fla. Dist. Ct. App. 2001) ("Although courts are not bound to utilize the fair market value method of valuation and may exercise such discretion as is required to further the purposes of restitution, fair market value is to be used where it would adequately compensate the victim. Absent evidence that the item taken was a family heirloom or a new automobile, for which fair market value would not adequately compensate the victim, fair market value is the valuation method to be used." (citation omitted)).

[73] *See supra* Part III.A.

## IV.   THE FOURTH DISTRICT COURT OF APPEAL'S PROPOSAL

Unfortunately, when the State cannot prove the amount of a victim's loss, it causes unjust results that conflict with the purposes of restitution proceedings.  For example, in *Phillips v. State*, the defendant stole several items of jewelry from the victim.[74]  However, because the victim did not purchase many of the items, she did not have "first-hand knowledge of the [jewelry's] purchase date, original value, or quality."[75]  As a result, to determine the fair market value of her jewelry, the victim conducted online research, located three or four pieces that were similar, and averaged their prices.[76]  Following a restitution hearing in which she testified to the average prices of all of her stolen jewelry, the trial court ordered the defendant to pay restitution to the victim in the amount of $20,511, the total of her averages.[77]

On appeal, the Fourth District Court of Appeal of Florida ("Fourth DCA") reversed and remanded for a new evidentiary hearing, finding that as the law currently exists, "the victim's reliance on hearsay evidence from websites was insufficient to establish the restitution amount."[78]  But in doing so, the court acknowledged that establishing the restitution amount without relying on hearsay was "practically impossible" and that reversal "appears to have caused an unjust result for the victim, because she and the state appear to have no other means by which to prove the restitution amount" on remand.[79]

In addition, the court recognized that other Florida courts recently reversed restitution awards, leaving "wholly innocent person[s] . . . with a more difficult, if not impossible, path to recover their stolen items' value."[80]  Accordingly, the Fourth DCA recommended that the Florida Legislature revisit section 775.089 and "consider providing trial courts with wider discretion in setting the restitution amount."[81]  Specifically, the court recommended adding the following language to section 775.089(7): "The court is not bound by fair market value as the sole standard for determining restitution amounts, but rather may exercise such discretion

---

[74] Phillips v. State, 141 So. 3d 702, 703 (Fla. Dist. Ct. App. 2014) (per curiam).
[75] *Id.* at 705.
[76] *Id.* at 703.
[77] *Id.* at 704–05.
[78] *Id.* at 705.
[79] *Id.*
[80] *Phillips*, 141 So. 3d at 706.
[81] *Id.*

16

as required to further the purposes of restitution, including consideration of hearsay."[82]

When broken down, the Fourth DCA's recommendation has three components. First, it explicitly states that the court is not required to use fair market value to measure the victim's loss.[83] Second, it provides the court with discretion necessary "to further the purposes of restitution" in determining restitution amounts.[84] Third, it permits the use of hearsay evidence in restitution proceedings.[85]

## A. *Advantages*

From a public policy standpoint, there are significant advantages and only minor disadvantages to adopting the Fourth DCA's more relaxed framework to measuring and proving the amount of the victim's loss in a restitution hearing. One advantage is that it would alleviate onerous requirements of proof in restitution hearings. Importantly, restitution is a post-adjudication sentencing proceeding.[86] Therefore, the defendant's guilt has already been stipulated to or determined beyond a reasonable doubt. In adopting section 775.089, it is unlikely that the Florida Legislature intended to turn sentencing proceedings into "complicated, prolonged trials of the normal civil variety."[87] Instead, restitution proceedings should be "expedient and reasonable, with uncertainties resolved with a view toward achieving fairness to the victim."[88] By giving

---

[82] *Id.* In *Schenk v. State*, a case similar to *Phillips*, the Fifth District Court of Appeal of Florida subsequently joined the Fourth DCA's recommendation. Schenk v. State, 150 So. 3d 275, 276 (Fla. Dist. Ct. App. 2014).

[83] *Phillips*, 141 So. 3d at 706–07.

[84] *Id.*

[85] *Id.*

[86] *See* White v. State, 21 So. 3d 77, 79 (Fla. Dist. Ct. App. 2009) ("A restitution hearing is part of sentencing and requires the presence of counsel." (citing Moment v. State, 645 So. 2d 502, 503 (Fla. Dist. Ct. App. 1994))); Kittelson v. State, 980 So. 2d 533, 535 (Fla. Dist. Ct. App. 2008) (stating that "[r]estitution is a mandated part of sentencing").

[87] *Cf.* United States v. Gordon, 393 F.3d 1044, 1060 (9th Cir. 2004) (Fernandez, J., concurring and dissenting); Dolan v. United States, 560 U.S. 605, 613 (2010) (stating that a federal restitution "statute seeks speed primarily to help the victims of crime and only secondarily to help the defendant."); United States v. Faxon, 689 F. Supp. 2d 1344, 1356 (S.D. Fla. 2010) (stating that restitution "is not a civil matter even though restitution resembles a judgment for the benefit of a particular victim").

[88] *Gordon*, 393 F.3d at 1048 (majority opinion); *see also* United States v. Balentine, 569 F.3d 801, 804 (8th Cir. 2009) (stating that "the procedural

the trial court broader discretion in determining restitution amounts, and by allowing hearsay evidence to prove the amount of loss sustained by the victim, the Fourth DCA's proposal will save the State, the courts, and the victim considerable time and expense at sentencing.

Furthermore, while victims of crime may still pursue a damages award in a separate, civil lawsuit,[89] the Florida Legislature specifically adopted the restitution statute for the benefit of crime victims.[90] Restitution is "intended to provide an additional alternative to reimburse a crime victim, over and above traditional remedies like a civil lawsuit."[91] However, holding the State to the same requirements of those in a full-fledged civil lawsuit undermines the primary purpose of restitution because it makes it less likely that the victim will be compensated for their loss.[92] As one Florida judge explained, "the goal of the criminal justice system should be to strive to allow full compensation to victims—not to make them victims twice."[93] Thus, adopting the Fourth DCA's recommendation would not only save considerable time and money, it would also limit unjust results by better serving the primary purpose of the restitution statute.[94]

---

requirements of [restitution statutes] are intended to protect victims, 'not the victimizers.'" (quoting United States v. Grimes, 173 F.3d 634, 639 (7th Cir. 1999))); Dohrmann v. United States, 442 F.3d 1279, 1281 (11th Cir. 2006) (holding that "*Apprendi* does not apply to a restitution order"); *cf.* Norman v. State, 468 So. 2d 1063, 1065–66 (Fla. Dist. Ct. App. 1985) (Nimmons, J., concurring and dissenting) ("The same rigidities in proof of value which are required of the state in the trial of criminal cases involving value as an essential element of the crime should not, in my view, always be imposed in the determination of an appropriate amount of restitution.").

[89] FLA. STAT. § 775.089(8) (2014) ("An order of restitution hereunder will not bar any subsequent civil remedy or recovery, but the amount of such restitution shall be set off against any subsequent independent civil recovery.").

[90] State v. Hitchmon, 678 So. 2d 460, 462 (Fla. Dist. Ct. App. 1996).

[91] *Id.* (citing Spivey v. State, 531 So. 2d 965, 967 (Fla. 1988)).

[92] *See* Paroline v. United States, 134 S. Ct. 1710, 1724 (2014) ("Aside from the manifest procedural differences between criminal sentencing and civil tort lawsuits, restitution serves purposes that differ from (though they overlap with) the purposes of tort law. Legal fictions developed in the law of torts cannot be imported into criminal restitution and applied to their utmost limits without due consideration of these differences." (citation omitted)); *supra* Part III.

[93] Thompson v. State, 68 So. 3d 425, 427 (Fla. Dist. Ct. App. 2011) (Polen, J., concurring).

[94] *See* Santana v. State, 795 So. 2d 1112, 1113 (Fla. Dist. Ct. App. 2001) ("The primary objectives of restitution awards pursuant to section 775.089 are to give the criminal defendant an opportunity to make amends and to make the victim of a crime whole, at least to the extent it is possible to do so.").

Adopting the Fourth DCA's suggestion would also give the trial court the discretion it needs to establish a restitution amount that adequately instills upon the defendant the consequences of his or her actions.[95] Mandatory restitution is an important aspect of sentencing defendants, in part, because it "impress[es] upon offenders that their conduct produces concrete and devastating harms for real, identifiable victims."[96] Moreover, the secondary purpose of restitution is "to serve the rehabilitative, deterrent, and retributive goals of the criminal justice system."[97] The Supreme Court of Florida previously recognized that "[t]he trial court is best able to determine how imposing restitution may best serve those goals in each case."[98]

However, the current state of the law severely limits the trial court's ability to determine an appropriate restitution amount at sentencing. Florida Rule of Criminal Procedure 3.720(b) provides that "[t]he court shall entertain submissions and evidence by the parties that are relevant to the sentence."[99] To the extent that restitution is an important aspect of sentencing,[100] hearsay evidence is often relevant to the defendant's sentence because, as mentioned above, it is helpful, and sometimes necessary, to determine the amount of loss sustained by the victim as a result of the defendant's criminal offense.[101] Section 775.089 in fact requires the court to consider the amount of the victim's loss in determining whether to order any restitution at all.[102] Nonetheless,

---

[95] *Cf. Paroline*, 134 S. Ct. at 1729 ("District courts routinely exercise wide discretion both in sentencing as a general matter and more specifically in fashioning restitution orders."); *id.* at 1734 (Roberts, C.J., dissenting) ("It is true that district courts exercise substantial discretion in awarding restitution and imposing sentences in general.").

[96] *Id.* at 1727 (majority opinion).

[97] Glaubius v. State, 688 So. 2d 913, 915 (Fla. 1997).

[98] Spivey v. State, 531 So. 2d 965, 967 (Fla. 1988); *see also* Noel v. State, 127 So. 3d 769, 774, 778 (Fla. Dist. Ct. App. 2013) (recognizing that "restitution to victims is a central 'penological interest' of Florida criminal law," and concluding that it was not a denial of due process for the trial court to give the defendant "the opportunity to mitigate 'the severity of an otherwise appropriate sentence' by paying restitution to the victims in an amount he indicated he could afford"), *review granted*, 153 So. 3d 907 (Fla. 2014) (unpublished table decision).

[99] FLA. R. CRIM. P. 3.720(b); *see also* State v. Davis, 133 So. 3d 1101, 1106 n.6 (Fla. Dist. Ct. App. 2014) (stating that rule 3.720(b) "does not define the term 'submissions' and neither expressly permits nor prohibits the admission of hearsay evidence").

[100] *See supra* notes 96–97 and accompanying text.

[101] *See supra* notes 49–52, 55 and accompanying text.

[102] FLA. STAT. § 775.089(6)(a) (2014).

although hearsay evidence is admissible in other sentencing proceedings in Florida, such as probation revocation hearings[103] and capital sentencing proceedings,[104] hearsay is still inadmissible in restitution hearings.[105] As a result, when the State cannot prove the amount of the victim's loss without relying on hearsay, the court cannot order the defendant to pay restitution, and the defendant may not appreciate the full effect of his illegal acts.

Relatedly, once the court has determined that monetary restitution is appropriate in an individual case, it should have broad discretion in fashioning a restitution order.[106] In *Hawthorne*, the court held that the trial court is not tied to fair market value as the sole standard for measuring the victim's loss, but rather, it "may exercise such discretion as required to further the purposes of restitution."[107] However, the court limited its holding to instances when fair market value is an inappropriate measure of the victim's loss.[108] Therefore, in most instances, the trial court must use fair market value to determine the amount of the victim's loss, which means that the State must present a witness with personal knowledge of the fair market value of the victim's loss, or the State must present evidence of all four fair market value factors.[109]

While the holding in *Hawthorne* certainly improved the law governing restitution proceedings, it failed to address instances when fair market value may adequately reflect the victim's loss, but the State is unable to meet the demanding criteria to prove fair market value. In such

---

[103] Russell v. State, 982 So. 2d 642, 646 (Fla. 2008) ("It is undisputed that hearsay evidence is admissible in a probation revocation hearing to prove a violation of probation.").

[104] FLA. STAT. § 921.141(1) (2014) ("Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements.").

[105] *See* sources cited *supra* notes 53–54.

[106] Paroline v. United States, 134 S. Ct. 1710, 1727–28 (2014) (quoting 18 U.S.C. § 3664(a)); *see* source cited *supra* note 95.

[107] State v. Hawthorne, 573 So. 2d 330, 333 (Fla. 1991).

[108] *See id.* ("Where it is determined that a restitution amount equal to fair market value adequately compensates the victim or otherwise serves the purposes of restitution, we agree with the court below that the value should be established either through direct testimony or through evidence of the four factors announced in *Negron*." (footnote omitted)).

[109] *See id.* ("We recognize that in most instances the victim's loss and the fair market value of the property at the time of the offense will be the same."); *supra* Part III.A.

circumstances, the victim is left without recourse, and the defendant receives a windfall for his actions. Rather than give the court broad discretion in rare instances when fair market value is inappropriate to measure the victim's loss, the court should have discretion to take into account any appropriate factor in *all* instances.[110] The Fourth DCA's recommendation simply adopts the approach taken in *Hawthorne*, but permits it in all circumstances. This is a reasonable approach considering the fact that case law subsequent to *Hawthorne* suggests that the defendant can easily defeat the State's presentation of evidence concerning fair market value by objecting to hearsay or speculation, or by noting that not all of the factors pertaining to fair market value have been proved by competent, substantial evidence.[111]

## B. *Disadvantages*

A disadvantage of the Fourth DCA's recommendation is that it failed to provide an alternative measure of the victim's loss. Although the Fourth DCA reiterated the holding in *Hawthorne* that the trial court is not tied to "fair market value as the sole standard for determining restitution amounts,"[112] it did not say what standard the court should use when fair market value is not used. Nevertheless, case law subsequent to

---

[110] *See Paroline*, 134 S. Ct. at 1728 ("There are a variety of factors district courts might consider in determining a proper amount of restitution, and it is neither necessary nor appropriate to prescribe a precise algorithm for determining the proper restitution amount at this point in the law's development. Doing so would unduly constrain the decisionmakers closest to the facts of any given case."); United States v. Boccagna, 450 F.3d 107, 116 (2d Cir. 2006) ("Notwithstanding the general reliability of fair market value as a measure of property value, in some circumstances other measures of value may more accurately serve the statutory purpose to ensure a crime victim's recovery of the full amount of his loss.").

[111] *See, e.g.*, Hunter v. State, 48 So. 3d 174, 176 (Fla. Dist. Ct. App. 2010) ("The trial court erred in establishing the amount of restitution because the victim could not identify all of the items that had been taken, relied on hearsay evidence to establish value, and failed to take into account depreciation."); Mansingh v. State, 588 So. 2d 636, 638 (Fla. Dist. Ct. App. 1991) (reversing the trial court's restitution order "because the state presented evidence on only one of the [*Negron*] four factors"); *see also* Thompson v. State, 68 So. 3d 425, 427 (Fla. Dist. Ct. App. 2011) (Polen, J., concurring) (stating that "objections of hearsay as to sources of information as to value [and the] absence of receipts for items bought years earlier" "make it more difficult for a victim to prove the 'fair market value' of their stolen property"); *cf.* Matthew C. Lucas, *Valuing the Marital Home*, 88, no.4 FLA. B.J., 8, 9 (2014) (stating that "[d]ivining the most probable price for a property's fair market value poses an interesting challenge in the law" in part because "the analysis inherently requires elements of speculation").

[112] *Hawthorne*, 573 So. 2d at 333.

*Hawthorne* established that "fair amount" value is the appropriate, alternative measure to fair market value.[113] As with replacement value and retail value, "fair amount" value may ultimately be the same as fair market value.[114] Yet, the method of proof of "fair amount" value is much more conducive to accomplishing the purposes of restitution because it is intentionally broad and allows the court to consider any appropriate factor in determining the amount of restitution to award.[115] Thus, the fact that the Fourth DCA did not provide an alternative measure of value should not prevent adoption of the Fourth DCA's proposal; "fair amount" value is implicitly the measure of value under the Fourth DCA's proposal.

A related disadvantage of the Fourth DCA's proposal is that without a definite standard to guide the court's determination of the victim's loss, the trial court may appear to have too much discretion, which may result in a windfall for the victim. However, at least in theft cases, it is highly unlikely that a trial court's restitution award would exceed any possible judgment in a civil action because, in a civil action, the victim may claim treble damages and attorneys' fees in addition to the property loss.[116] Moreover, safeguards in the law already protect against trial courts abusing their discretion. For example, even when the court uses "fair amount" value to determine the victim's loss, the trial court's restitution order must still be supported by competent, substantial evidence.[117] In addition, the trial court may only award restitution in an amount causally connected to the defendant's crime.[118] Thus, even with more discretion, courts would not be able to award restitution in an arbitrary amount that favors the victim at the expense of the defendant's right to due process.[119]

Moreover, while the purpose of restitution is not to create a windfall for the victim,[120] it is certainly not to create one for the defendant either. In

---

[113] *See* Glaubius v. State, 688 So. 2d 913, 915 (Fla. 1997).

[114] *See supra* notes 23–24, 26 and accompanying text.

[115] *See Glaubius*, 688 So. 2d at 915; text accompanying *supra* note 31. Importantly, section 775.089, Florida Statutes, is not subject to a void-for-vagueness challenge because it does not penalize any conduct. *See* State v. Brake, 796 So. 2d 522, 527 (Fla. 2001) ("In order for a criminal statute to withstand a void-for-vagueness challenge, the language of the statute must provide adequate notice of the conduct it prohibits when measured by common understanding and practice.").

[116] *See* S.M. v. State, 159 So. 3d 966, 968 n.1 (Fla. Dist. Ct. App. 2015) (citing § 772.11(1), Fla. Stat. (2012)).

[117] *See supra* note 18 and accompanying text.

[118] *See supra* note 11 and accompanying text.

[119] *See supra* note 17 and accompanying text.

[120] *Glaubius*, 688 So. 2d at 916.

other contexts, Florida laws are much more forgiving where one party is the cause of a lack of evidence favorable to the other party. For example, section 90.804, Florida Statutes, provides that hearsay evidence is admissible if the opposing party "wrongfully caused, or acquiesced in wrongfully causing, the declarant's unavailability as a witness, and did so intending that result."[121] Case law provides that criminal charges must be dismissed if the prosecution destroys exculpatory evidence in bad faith.[122] There are even independent causes of action, both civil and criminal, for intentionally destroying evidence that hinders the opposing party's ability to prove its case.[123] The principle that supports all of these laws is that the party responsible for the intentional destruction of evidence should not benefit from its bad-faith actions, and the party relying on the evidence should not be penalized for the bad-faith acts of another. Similarly, in the context of restitution proceedings, the State has proven or the defendant concedes that he has wrongfully caused loss or damage to property that could otherwise be used to determine its value. Thus, in light of the aforementioned principle, the law should be less concerned with providing windfalls to victims, and more tolerant of victims' inability to testify to the amount of restitution when their inability is due largely to no fault of their own. The Fourth DCA's suggestion simply acknowledges this principle by alleviating strict requirements of proof in a restitution hearing.

Another potential disadvantage of the Fourth DCA's suggestion concerns the admission of hearsay. When hearsay is permissible as the

---

[121] FLA. STAT. § 90.804(f) (2014).

[122] State v. Milo, 596 So. 2d 722, 723 (Fla. Dist. Ct. App. 1992) ("Willful, intentional destruction of evidence requires sanctions. Bad faith destruction of evidence requires dismissal of the charges." (citing Louissaint v. State, 576 So. 2d 316 (Fla. Dist. Ct. App. 1990))).

[123] *See* FLA. STAT. § 918.13 (2014) (providing that it is a third-degree felony for any "person, knowing that a criminal trial or proceeding or an investigation by a duly constituted prosecuting authority, law enforcement agency, grand jury or legislative committee of this state is pending or is about to be instituted, [to] . . . [a]lter, destroy, conceal, or remove any record, document, or thing with the purpose to impair its verity or availability in such proceeding or investigation"); Royal & Sunalliance v. Lauderdale Marine Ctr., 877 So. 2d 843, 845 (Fla. Dist. Ct. App. 2004) ("The essential elements of a [civil] spoliation of evidence claim are: '(1) existence of a potential civil action, (2) a legal or contractual duty to preserve evidence which is relevant to the potential civil action, (3) destruction of that evidence, (4) significant impairment in the ability to prove the lawsuit, (5) a causal relationship between the evidence destruction and the inability to prove the lawsuit, and (6) damages.'" (quoting Hagopian v. Publix Supermarkets, Inc., 788 So. 2d 1088, 1091 (Fla. Dist. Ct. App. 2001))).

only evidence offered to support the trial court's award of restitution, the result may be questionable. For example, whether due to poor memory, improper incentive, or other reasons, victims may exaggerate the true value of their property.[124] The reliability of evidence is in fact the core concern underlying the general exclusion of hearsay evidence.[125]

Concern for the reliability of hearsay evidence should not prevent adoption of the Fourth DCA's proposal, however, because Florida courts already require that for hearsay to be admissible, it must contain "some minimal indicia of reliability."[126] In addition, not all hearsay is a verbal assertion by the witness. In many instances, the State offers documentary evidence of value, which is generally considered more reliable than oral hearsay,[127] and is verifiable by the defendant and the court, but the evidence is nevertheless turned away due to the general exclusion of hearsay in restitution proceedings.[128] In such circumstances, if the trial court finds the documentary evidence to be sufficiently reliable, it is unclear why the victim or the State is nonetheless required to incur the expense and inconvenience of presenting an additional witness to recount what is already stated in the document.

A related disadvantage of allowing hearsay, including documentary hearsay, is that the defendant may not have the opportunity to cross-examine the declarant on matters such as the declarant's qualifications

---

[124] Schering Corp. v. Pfizer Inc., 189 F.3d 218, 232 (2d Cir.), *as amended on reh'g*, (Sept. 29, 1999) ("The hearsay rule is generally said to exclude out-of-court statements offered for the truth of the matter asserted because there are four classes of risk peculiar to this kind of evidence: those of (1) insincerity, (2) faulty perception, (3) faulty memory and (4) faulty narration, each of which decreases the reliability of the inference from the statement made to the conclusion for which it is offered." (citations omitted)).

[125] *See id.*; Lee v. Illinois, 476 U.S. 530, 543 (1986) (stating that hearsay evidence that "does not fall within 'a firmly rooted hearsay exception' . . . is thus presumptively unreliable").

[126] Box v. State, 993 So. 2d 135, 139 (Fla. Dist. Ct. App. 2008); *accord* McKown v. State, 46 So. 3d 174, 175 (Fla. Dist. Ct. App. 2010).

[127] *See* United States v. Redd, 318 F.3d 778, 784 (8th Cir. 2003) ("Documentary hearsay evidence generally provides greater indicia of reliability than oral hearsay. This distinction is reflected in numerous long-standing exceptions to the hearsay rule.").

[128] *See, e.g.*, Butler v. State, 970 So. 2d 919, 921 (Fla. Dist. Ct. App. 2007) ("Because the written estimate was inadmissible hearsay evidence, we hold that the trial court erred in admitting the estimate and basing the value of the exterior door solely on this evidence.").

and his or her methods or factors used to value the property.[129]  However, this concern should also not prevent adoption of the Fourth DCA's proposal for at least two reasons.  First, at least one Florida court has previously concluded that the Sixth Amendment's Confrontation Clause "does not apply in restitution hearings because restitution proceedings are an aspect of sentencing."[130]  Therefore, the defendant does not have a constitutional right to confront witnesses against him in a restitution hearing.[131]

Second, the trial court's ability to discern truth from falsity and to assign weight to evidence in a restitution hearing should not be underestimated or substituted.  For the same reason appellate courts defer to the trial court's determinations of facts in general, the trial court's decisions concerning the credibility of witnesses and the weight to give to evidence in restitution proceedings should not be second-guessed on appeal.[132]  While sitting as trier of fact, the trial court is in the best position to evaluate the victim's testimony or other evidence offered by the State.[133]

---

[129] *See* Hochstadt v. Sanctuary Homeowner's Ass'n, Inc., 761 So. 2d 1163, 1165 (Fla. Dist. Ct. App. 2000) (stating that "the opinion of the appraiser as a witness would be subject to cross-examination as to qualifications, as well as in other areas, and that safeguard alleviates the concerns we have about admitting only the records"); *see also* BLACK'S LAW DICTIONARY 838 (10th ed. 2014) (stating that "[t]he chief reasons for the [hearsay] rule are that out-of-court statements amounting to hearsay are not made under oath and are not subject to cross-examination").

[130] Box v. State, 993 So. 2d 135, 139 (Fla. Dist. Ct. App. 2008).  The court also reiterated that "the State is still not permitted to admit any and all hearsay" and that "the trial court may only allow hearsay having some minimal indicia of reliability." *Id.*

[131] *Id.*

[132] *See* Shaw v. Shaw, 334 So. 2d 13, 16 (Fla. 1976) ("It is clear that the function of the trial court is to evaluate and weigh the testimony and evidence based upon its observation of the bearing, demeanor and credibility of the witnesses appearing in the cause.  It is not the function of the appellate court to substitute its judgment for that of the trial court through re-evaluation of the testimony and evidence from the record on appeal before it.  The test . . . is whether the judgment of the trial court is supported by competent evidence.  Subject to the appellate court's right to reject 'inherently incredible and improbable testimony or evidence,' it is not the prerogative of an appellate court, upon a de novo consideration of the record, to substitute its judgment for that of the trial court." (footnote omitted)).

[133] *See* Stephens v. State, 748 So. 2d 1028, 1034 (Fla. 1999) ("We recognize and honor the trial court's superior vantage point in assessing the credibility of witnesses and in making findings of fact.  The deference that appellate courts afford findings of fact based on competent, substantial evidence is an important

Moreover, even when hearsay is admissible in a restitution proceeding, the defendant may cross-examine any witness that does testify and may introduce contrary evidence—including reliable hearsay evidence—in his or her defense.[134]  Thus, with these considerations in mind, the admissibility of hearsay in a restitution proceeding should not prevent the adoption of the Fourth DCA's recommendation.

\* \* \* \*

## CONCLUSION

Due to the unjust results that can occur when the court has limited discretion and when the State must meet onerous requirements to prove the amount of loss sustained by the victim of a crime, the Florida Legislature should revise section 775.089 to better conform to the purposes of restitution proceedings, which are both compensatory and punitive.  Recognizing that many victims cannot testify to the fair market value of their property, the Fourth DCA recommended providing the trial court with broader discretion to further the purposes of restitution.  In addition, the Fourth DCA's proposal does not require the court to use fair market value in determining the amount of the victim's loss and expressly permits the admission of hearsay evidence in restitution proceedings.  As such, the Fourth DCA's proposal offers a great starting point in revising section 775.089 because it relaxes both the measurement of value and the method of proof in restitution proceedings.  However, the Fourth DCA's proposal does not explicitly address important concerns, such as the appropriate measure of value, the lack of reliability of hearsay evidence, and the defendant's right to due process.  Thus, in light of the concerns mentioned above, the Florida Legislature should adopt the Fourth DCA's proposal, but with the following three caveats that incorporate aspects of the federal standard.[141]

principle of appellate review."  (citations omitted)); *see, e.g.*, Henry v. State, 840 So. 2d 1170, 1171 (Fla. Dist. Ct. App. 2003) (stating that the trial court concluded that the defendant's testimony concerning the amount of money she misappropriated "lacked credibility").

[134] *See* Del Valle v. State, 80 So. 3d 999, 1020 (Fla. 2011) (Lewis, J., dissenting) ("A defendant has the ability to defeat the imposition of a restitution order, or the amount, if he or she successfully contests the validity of any damage or loss allegedly caused to a victim by the defendant's crime."); Faurisma v. State, 61 So. 3d 497, 497–98 (Fla. Dist. Ct. App. 2011 ) (per curiam) (reversing the trial court's restitution order because the defendant was not given an opportunity to be heard).

[141] As with any change in statutory law, there may be unanticipated problems that arise in the future.  However, because the recommendation mirrors the

First, because the Fourth DCA's proposal does not provide an alternative measure to fair market value, the statute should explain that the court may use "fair amount" value to determine the amount of the victim's loss in all circumstances.[142] Second, although some Florida courts already provide that hearsay must contain "some minimal indicia of reliability" to be admissible in a restitution hearing, it would be wise to include this language explicitly in the statute as well.[143] Third, because the Confrontation Clause does not apply at sentencing, the Legislature should consider providing the defendant with an opportunity to rebut or refute any hearsay evidence that is offered by the State, as is already done in Florida capital sentencing proceedings.[144]

In accordance with the Fourth DCA's recommendation, and the caveats mentioned above, section 775.089(7) should ultimately read as follows, with the suggested changes in italics:

> Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. *In determining restitution amounts, the court may exercise discretion as required to further the purposes of restitution. The court may consider any appropriate factor in awarding a fair amount that adequately compensates the victim.* The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense is on the state attorney. The burden of demonstrating the present financial resources and the absence of potential future financial resources of the defendant and the financial needs of the defendant and his or her dependents is on the defendant. The burden of demonstrating such other matters as the court

federal standard, there is an entire body of federal case law that will aid in addressing these problems.

[142] For purposes of this Article, "fair amount" value and a "reasonable approximation" of value are treated as the same, at least in terms of monetary value measurements. *See supra* note 137.

[143] This does not mean that the hearsay evidence must meet an established exception. *See supra* note 139. "To show that the evidence lacks 'minimal indicia of reliability' a defendant must establish '(1) that the challenged evidence is materially false, and (2) that it actually served as a basis for the [restitution order].'" *Bourne*, 130 F.3d at 1447 (quoting *Hairston*, 888 F.2d at 1353). "Whether hearsay evidence is reliable, and thus admissible, is a determination left to the discretion of the sentencing judge." United States v. Gerstein, 104 F.3d 973, 978 (7th Cir. 1997).

[144] *See supra* notes 57, 104, 130, 139.

deems appropriate is upon the party designated by the court as justice requires. *Hearsay evidence is admissible in restitution proceedings if the hearsay evidence is found by the court to have a minimal indicia of reliability. The defendant may refute hearsay evidence offered by the state attorney.*

In addition, because the above proposal permits the court to use discretion "to further the purposes of restitution," but the purposes of restitution do not appear anywhere in section 775.089, the Florida Legislature should explicitly include the purposes of restitution at the forefront of the statute. With the implementation of these suggested changes, the purposes of section 775.089 are more likely to be accomplished, which means that defendants who cause loss to innocent victims are less likely to receive a windfall for their criminal actions and that victims of crime are more likely to be compensated for their losses.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***